HINE, APPELLANT, *v.* THE DAYTON SPEEDWAY CORP. ET AL., APPELLEES.

[Cite as Hine v. Dayton Speedway Corp., 20 Ohio App. 2d 185.]

(No. 3333—Decided March 26, 1969.)

*Messrs. Marshall & Smith* and *Messrs. Pfau, Comstock & Springer,* for appellant.

*Messrs. Curtner, Selva, Parkin, Seller & Barnhart,* for appellee The Dayton Speedway Corporation.

*Messrs. Young & Alexander,* for appellee Automobile Racing Club of America, Inc.

KERNS, P. J.    This is an appeal on questions of law from an order of the Court of Common Pleas of Montgomery County sustaining motions of the defendants, appellees herein, for a directed verdict.

The action was commenced by the plaintiff, Ivan L. Hine, appellant herein, as a result of personal injuries sustained by him in an accident which occurred at the Dayton Speedway on September 16, 1962. The accident occurred during a stock-car race sanctioned by the defendant Automobile Racing Club of America, Inc., which was known at that time as the Midwest Association for Race Cars, Inc. Plaintiff owned one of the cars which was participating in a race and was standing beside his car in an area used for pit stops when two other race cars collided, causing one of them to run into him.

The defendants filed answers alleging, among other things, that the plaintiff had signed a release of all claims for personal injuries when he obtained permission to enter the pit area. Hence, the case was presented upon the preliminary question revolving around the legality of the release. At the conclusion of the evidence upon this issue, the trial court sustained the motions of the defendants for a directed verdict.

The release in question reads, in pertinent part, as follows:

"In consideration of permission to enter the premises of the Dayton Speedway Race Track, and further consideration of permission to participate in any race held at said premises when qualified, either as an owner, driver, mechanic, attendant, or in any other capacity, the receipt of which is hereby acknowledged, the undersigned hereby releases the promoter, MARC, and its agents, officers, ser-

vants and employees from all claims, demands, actions, causes of action, and from all liability for damage, loss or injury of whatsoever kind, nature or description that may arise or be sustained by the undersigned, while in, on, upon, or while enroute to or from said premises or any premises leased to, owned by, sanctioned by, or under the control of MARC.

"We are duly aware of the risks and hazards inherent upon entering these premises or in participating in any races held upon these premises, and do hereby voluntarily assume all risks of loss, damage or injury, including death, that may be sustained by us or either of us either to person or property while in, on, or upon said premises.

"This release shall be binding upon our heirs, administrators, executors and assigns.

"In signing the foregoing release, we certify that we are over 21 years of age, that we have read and fully understand the same; that we are not an agent or employee of MARC and/or of the promoter: that we are independent contractors and assume all responsibility for charges, premiums and taxes, if any, including without limiting the generality thereof, social security taxes, unemployment insurances taxes, compensation insurance, income taxes and withholding taxes."

At the trial, a photostatic copy of the original release was admitted into evidence, and the plaintiff contends, for his first assignment of error, that the document submitted as a release was not the best evidence and that no adequate basis was laid for the admission of such secondary evidence.

Photostatic reproductions of writings are ordinarily regarded as only secondary evidence. 21 Ohio Jurisprudence 2d 286, Section 270; 76 A. L. R. 2d 1356. However, where a party offering a photostatic copy shows that he cannot produce the original and shows further that the reproduction is an accurate copy of the original, the copy may then be properly admitted. 21 Ohio Jurisprudence 2d 290, Section 275; 29 American Jurisprudence 2d 548, Section 490.

In the present case, the evidence reflects a plausible excuse for the inability of the defendants to produce the original copy of the release, and, more importantly, there is substantial evidence to support the conclusion that the photostatic copy admitted into evidence was a genuine reproduction of the original. Significantly, there is credible, unrebutted testimony from which it can be inferred that the copy admitted into evidence is a complete replica of the original release, and this factor tends to depreciate the appellant's companion argument challenging the degree of diligence used in searching for the original copy.

The quantum and quality of proof required for the admission of secondary evidence is not gauged by any uniform rule, but rests largely within the discretion of the trial court. 21 Ohio Jurisprudence 2d 293, Section 279; 29 American Jurisprudence 2d 519, Section 459; 32A Corpus Juris Secundum 192, Section 842. And while the tremendous importance of the release in this particular case added to the responsibility of the trial court in the exercise of its discretion, the evidence is such as to preclude any alleged error predicated upon an abuse of discretion. The first assignment of error must therefore be overruled.

The second assignment of error is based upon the assertion that "the trial court erred in failing to render final judgment in favor of the plaintiff-appellant upon the issue of the release for the reason that the release, if properly authenticated, was not valid to release a future injury as the release lacked the required specificity in that it did not specify that it was a release for actions arising out of negligence or wanton misconduct, but specified only assumption of risks and hazards inherent in automobile racing."

At the outset, an examination of the record discloses that the allegations of the plaintiff's pleading in this case, if susceptible to proof in every detail, are insufficient to sustain an action based exclusively on wanton misconduct.

"Wanton misconduct" is such conduct as manifests a disposition toward perversity. *Universal Concrete Pipe Co.*

v. *Bassett,* 130 Ohio St. 567; *Helleren* v. *Dixon,* 152 Ohio St. 40. The term "wanton misconduct" has been defined in numerous cases under a variety of circumstances (30 West's Ohio Digest, 988), and its extreme connotation must be further weighed and considered in the present case in the light of circumstances showing that the plaintiff assumed all risks incident to the sport of automobile racing. See *Roeckner* v. *Pence Drag Strip, Inc.,* 10 Ohio App. 2d 20. Automobile racing, by its nature, embraces unusual danger to life and limbs, and, under the circumstances of this case, the facts alleged will not support an action based upon wanton misconduct.

The more difficult question presented by this assignment of error is whether the release is broad enough to relieve the defendants from liability for negligence. The release does not specifically refer to the word "negligence," but there can be no doubt that its exculpatory language is thorough and comprehensive. Specifically, the plaintiff released the defendants from *all* causes of action and from *all* liability for injuries.

Contracts purporting to relieve one from the results of his failure to use ordinary care must be strictly construed, but it is not necessary to use the word "negligence" if the intent of the parties is expressed in clear and unequivocal terms. *General Accident Assurance Corp.* v. *Smith and Oby Co.,* 84 Ohio Law Abs. 116; *New Amsterdam Casualty Co.* v. *Kilroy Structural Steel Co.,* 81 Ohio Law Abs. 527; *St. Paul Mercury Indemnity Co.* v. *Kopp,* 70 Ohio Law Abs. 259. See, also, *Lee* v. *Allied Sports Associates, Inc.,* 209 N. E. 2d 329, which involves a release from liability for injuries incurred in the pit area of a race track.

After construing the language of the release presented herein as strictly as the law will allow, and with full awareness of the severity of the injuries involved, we are nonetheless of the opinion that the document anticipates the alleged negligence of the defendants. In fact, the release has no purpose unless it insures against negligence because, even in the absence of a release, the plaintiff

assumed all risks incident to the sport in which he was engaged.

This case has many characteristics similar to those presented in the case of *French* v. *Special Services, Inc.*, 107 Ohio App. 435, where the syllabus provides as follows:

"1. A participant in a stock car race and the proprietor thereof are free to contract in such a manner as to relieve the latter from the responsibility for damages or injuries to the former caused by the latter's negligence, excepting when caused by willful or wanton misconduct.

"2. An agreement between a participant in and the proprietor of a stock car race, whereby the former assumes the risk of injuries resulting from his participation in such event and releases the proprietor from any claims for damages, is not invalid as against public policy."

The second assignment of error is overruled.

With reference to the third assignment of error, the trial court observed that "reasonable minds could come to no other conclusion than that the plaintiff voluntarily executed the release and that there was no clear and convincing evidence of any fraud either in the factum or in the inducement." The record amply supports this conclusion. Hence, the third assignment of error will be overruled upon the authority of *Dice* v. *Akron, Canton & Youngstown Rd. Co.*, 155 Ohio St. 185; *McCuskey* v. *Budnick*, 165 Ohio St. 533; *McBennett* v. *Piskur*, 3 Ohio St. 2d 8.

This court finding no prejudicial error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

SHERER and CRAWFORD, JJ., concur.