**SWARTZENTRUBER et al., Appellants,**

v.

**WEE–K CORPORATION, Appellee.**

[Cite as *Swartzentruber v. Wee–K Corp.* (1997), 117 Ohio App.3d 420.]

Court of Appeals of Ohio,
Fourth District, Vinton County.

No. 96CA502.

Decided Jan. 14, 1997.

*Steve J. Edwards*, for appellant.

*Mollica, Gall, Sloan & Sillery Co., L.P.A.*, and *Steven T. Sloan*, for appellee.

_____

STEPHENSON, Judge.

This is an appeal from a summary judgment entered by the Court of Common Pleas of Vinton County, Ohio, in favor of Wee–K Corporation, defendant below and appellee herein, on the claim brought against it by Krista K. Swartzentruber, plaintiff below and appellant herein. The following error is assigned for our review:

"The trial court erred in granting defendant's motion for summary judgment on the claim of plaintiff Krista Swartzentruber."

The record reveals the following facts pertinent to this appeal. On September 12, 1992, appellant went horseback riding at a livery stable operated by appellee in Vinton County, Ohio. She rented both a horse and riding equipment from appellee and then went riding, whereupon she was thrown from her horse and sustained injuries. Appellant commenced the action below on May 13, 1993, alleging that appellee had been negligent in selecting an appropriate horse, providing the appropriate equipment, and designating an appropriate trail for her to ride. It was further averred that appellee's actions were "willful, wanton and malicious." Matthew Swartzentruber, appellant's husband, also joined in the complaint and asserted a claim for loss of consortium. Together, they demanded $500,000 in compensatory damages.

Appellee filed an answer denying the allegations in the complaint. It also asserted the affirmative defenses that appellant had assumed the risk of injury and that, in any event, she had executed a "release" which barred her from any recovery in negligence. On July 29, 1994, appellee moved for summary on the basis of that release. Appellant filed a memorandum in opposition, challenging the "release" as vague and overbroad and arguing that it was unenforceable. A decision was issued by the lower court on February 28, 1995, finding that the release was "unambiguous on its face" and that appellee was entitled to judgment as a matter of law. An entry to that effect was filed on March 21, 1995. The remaining loss-of-consortium claim was settled and dismissed on February 7, 1996. This appeal followed.[1]

_____

1. We point out that the March 21, 1995 summary judgment entry did not resolve all the claims in this action and did not contain the Civ.R. 54(B) "no just reason for delay" language. Thus, there was not a final appealable order for us to review at that time. See *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, at the syllabus. The February 7, 1996 entry dismissing the loss-of-consortium claim was the final order entered in this case and

The subject of this appeal is the March 21, 1995 entry of summary judgment, which barred appellant from pursuing claims of negligence and "willful" and "wanton" misconduct against appellee. It is argued on appeal that this judgment was in error. We begin our analysis of this argument by noting that an appeal from a summary judgment is conducted under a *de novo* standard of review. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327, 1328–1329; *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 43–44; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272. That is to say, we afford no deference whatsoever to the trial court's decision, see *Tardy v. Norfolk S. Corp.* (1995), 103 Ohio App.3d 372, 379, 659 N.E.2d 817, 821; *Oiler v. Willke* (1994), 95 Ohio App.3d 404, 407, 642 N.E.2d 667, 669; *Shepherd v. United Parcel Serv.* (1992), 84 Ohio App.3d 634, 641, 617 N.E.2d 1152, 1156–1157, and conduct our own independent review to determine whether summary judgment was appropriate. *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317, 320; *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11–12; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 139, 601 N.E.2d 515, 518–519. Summary judgment under Civ.R. 56 is deemed appropriate when the movant demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party, said party being entitled to have the evidence construed most strongly in his favor. See, generally, *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, at paragraph three of the syllabus; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. It should also be noted that it is the party moving for summary judgment under Civ.R. 56 which bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273–274; *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108, 1113–1114; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802.

Appellee's sole basis for summary judgment below was the "release" of liability signed by appellant before she went horseback riding. It is undisputed in the cause *sub judice* that appellant executed this release. There is also no indication that there was any fraud or mistake in its procurement. Thus, appellee concludes, it was entitled to judgment in its favor as a matter of law. The lower court reached a similar conclusion, holding that the "release" agreement was valid

---

the entry of summary judgment from the previous year merged therein. See *Horner v. Toledo Hosp.* (1993), 94 Ohio App.3d 282, 289, 640 N.E.2d 857, 862.

and enforceable, and precluded any recovery against appellee in the proceedings below.  Appellant contends that this was error.  We agree, albeit to a limited extent.

Exculpatory contracts which clearly and unequivocally relieve one from the results of his own negligence are generally not contrary to public policy in Ohio.  See 17 Ohio Jurisprudence 3d (1980) 532–533, Contracts, Section 97.  It is therefore well-settled law that a participant in a recreational activity is free to contract with the proprietor of such activity so as to relieve the proprietor of responsibility for damages or injuries to the participant caused by the negligence of the proprietor.  See *Simmons v. Am. Motorcyclist Assn., Inc.* (1990), 69 Ohio App.3d 844, 846, 591 N.E.2d 1322, 1323–1324; *Cain v. Cleveland Parachute Training Ctr.* (1983), 9 Ohio App.3d 27, 28, 9 OBR 28, 29–30, 457 N.E.2d 1185, 1186–1187; *Seymour v. New Bremen Speedway* (1971), 31 Ohio App.2d 141, 147, 60 O.O.2d 236, 239, 287 N.E.2d 111, 116.  There is an exception, however, which prohibits a proprietor from contracting to relieve itself from responsibilty for willful or wanton misconduct.  See *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 90, 585 N.E.2d 384, 390; see, also, *Sanfillipo v. Rarden* (1985), 24 Ohio App.3d 164, 168, 24 OBR 253, 257–258, 493 N.E.2d 991, 995–996.  We note that appellant's third claim in the cause *sub judice* alleges "willful, wanton and malicious" misconduct.  Even a valid and enforceable exculpatory contract would not relieve appellee from liability for this sort of action.  It was clearly error for the trial court to enter summary judgment for appellee on this claim and the matter will be remanded for further proceedings.[2]

The more difficult question is whether the exculpatory contract bars appellant from maintaining her action in negligence.  As mentioned above, such contracts are not *per se* void as against public policy.  By the same token, however, they are not particularly favored in the law.  To that end, the Ohio Supreme Court has consistently held that exculpatory provisions in contracts are to be strictly construed so as not to relieve one from liability for his own negligence unless it is "expressed in clear and unequivocal terms."  See *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 46–47, 29 OBR 393, 394–396, 505 N.E.2d 264, 265–267; *Kay v. Penn. Rd. Co.* (1952), 156 Ohio St. 503, 46 O.O. 417,

---

2.  We acknowledge that a motion for summary judgment generally forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial.  See *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, at paragraph three of the syllabus.  Appellant produced no Civ.R. 56(C) evidentiary materials, in defense of summary judgment below to substantiate her claim of "willful, wanton and malicious" misconduct.  This is not dispositive, however, because appellee's motion below was based entirely on the purported "release" of liability.  No attempt was made to raise the issue of a lack of evidence to support this claim and, therefore, appellant was not obligated to produce evidentiary materials supporting that point.

103 N.E.2d 751, at paragraph two of the syllabus; *Dingledy Lumber Co. v. Erie Rd. Co.* (1921), 102 Ohio St. 236, 131 N.E. 723, at paragraph one of the syllabus. With this principle in mind, we turn our attention to the following exculpatory provision between the parties below:

"The undersigned is renting a riding horse and equipment from Wee–K CORP., an Ohio corporation, for trail riding over a designed area within the lands of Vinton County, Ohio. The undersigned agrees that he/she will be responsible for the riding horse and related equipment, reasonable wear and tear accepted, and that he/she will pay for any lost equipment at the rates posted within the rental office building. The undersigned understands that Wee–K CORP. cannot assume responsibility for any rider's safety since that depends upon the individual's skill and common sense. Therefore, the undersigned agrees that in consideration of the rental of said riding horse and related equipment he/she does voluntarily assume all risk of accident or damage to his or her person or property and hereby releases and all others associated with it, from any and all claims, demands, actions and causes of action of every kind and nature which he/she now has or might have arising out of any and all personal injuries, damages, expenses, and any loss or damage whatsoever resulting or to result from the rental of the horse and related equipment."

This provision is poorly drafted. Nowhere is it expressly stated that appellee is being relieved of liability for its own negligence. Indeed, the word "negligence" does not even appear in the provision. Appellant urges us to rule that the "release" is unenforceable on that basis alone. We decline. A "release" of liability, as stated above, must be "expressed in clear and unequivocal terms." *Kay, supra,* at paragraph two of the syllabus; *Dingledy Lumber Co., supra,* at paragraph one of the syllabus. The better practice would certainly be to expressly state the word "negligence" somewhere in the exculpatory provision. However, the absence of that term does not automatically render the provision fatally flawed. Our research has uncovered several cases where exculpatory contracts have been upheld despite the absence of the term "negligence." See, *e.g., Hine v. Dayton Speedway Corp.* (1969), 20 Ohio App.2d 185, 189, 49 O.O.2d 249, 251, 252 N.E.2d 648, 651–652; *Am. Druggists Ins. Co. v. Equifax, Inc.* (S.D.Ohio 1980), 505 F.Supp. 66, 69. The pivotal inquiry is whether it is clear from the general terms of the entire contract, considered in light of what an ordinary prudent and knowledgeable party of the same class would understand, that the proprietor is to be relieved from liability for its own negligence. See *Motorists Mut. Ins. Co. v. Jones* (1966), 9 Ohio Misc. 113, 38 O.O.2d 154, 223 N.E.2d 381; see, also, 57A American Jurisprudence 2d (1989) 126, Negligence, Section 67 (a specific reference to the word "negligence" is not required if it is the only reasonable construction which could be given to the provision).

This is a close case. However, we ultimately agree with the trial court that the terms of the contract are sufficiently unambiguous so as to say, as a matter of law, that they relieved appellee from liability for its own negligence. The operative sentence in this exculpatory provision is the one which states that the horseback rider "hereby releases and all others associated with it, from any and all claims * * * actions and causes of action of every kind and nature which he/she * * * might have arising out of any and all personal injuries * * *." It is true that this sentence does not expressly state the term "negligence." Nevertheless, it is difficult to construe a release "from any and all claims" that arise "out of any and all personal injuries" as anything but a release of liability for negligence. We also concede that this sentence fails to expressly specify who is being released from "all claims" of personal injury. However, we think it obvious that appellee, Wee–K Corporation, is the party being referred to in this provision. The name "Wee–K CORP." appears twice in other portions of this release. Moreover, the personal injury claims being released therein are expressly stated to be those which "result from the rental of the horse and related equipment." It is clearly specified in the beginning of the release that such horse and equipment are being rented from Wee–K Corporation. Construing the agreement as a whole, we find that it sufficiently provides for the release of appellee from liability for its own negligence. A contrary interpretation would require that we ignore the plain language that appellant was releasing "any and all claims" arising "out of any and all personal injuries" related to rental of horse and riding equipment from appellee. This would violate a principal tenet of contract construction that requires that common words appearing in an instrument be given their ordinary meaning. See *Sanitary Commercial Serv., Inc. v. Shank* (1991), 57 Ohio St.3d 178, 182, 566 N.E.2d 1215, 1219; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph two of the syllabus. Moreover, courts should refrain from reading ambiguity into an agreement where it does not otherwise exist. *Hastings Mut. Ins. Co. v. Clyne* (1993), 87 Ohio App.3d 198, 205, 621 N.E.2d 1355, 1359–1360; *Stotridge v. Admr.* (June 3, 1992), Pickaway App. No. 91CA18, unreported, 1992 WL 126232 (Stephenson, P.J., dissenting). The court below correctly found that the agreement was unambiguous and construed it to release appellee from all liability for its negligent acts.

Appellant counters by citing *Tanker v. N. Crest Equestrian Ctr.* (1993), 86 Ohio App.3d 522, 621 N.E.2d 589, wherein the Lorain County Court of Appeals found an exculpatory contract used by a livery stable to be so general in nature as to be meaningless and unenforceable. Our review of the exculpatory contract at issue therein leads us to wonder whether, if we had heard that case, the members of this court might have come out differently. Be that as it may, there are sufficient differences between the agreement in *Tanker* and the one in the cause *sub judice* as to make the two cases incommensurable. The exculpatory agreement in

*Tanker* made heavy use of indemnity language which is not present in this case. Moreover, there is no express mention therein that the livery stable was being "released" from personal injury claims. Such "release" language is expressly used in the contract at issue here.

For these reasons, appellant's assignment of error is (for the most part) overruled. It is sustained to the limited extent of appellant's claim for willful, wanton, and malicious conduct. The judgment is therefore affirmed in part and reversed in part, and that claim is remanded to the trial court for further proceedings.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HARSHA and KLINE, JJ., concur.