OPINION
Appellants, Lewis I. and David L. Conkey, appeal from a decision of the Franklin County Court of Common Pleas granting the summary judgment motion of appellees, Lija L. and William E. Eldridge, and Rome Hilliard Self-Storage, Inc.
Appellees, William and Lija Eldridge, operate a self-storage facility located at 466 Rome Hilliard Road in Columbus, Ohio. William Eldridge is the owner and sole shareholder of the corporation, and Lija Eldridge serves as general manager of the facility. They live in a house located adjacent to the facility and run the business out of this house. Lewis Conkey leased a parking space from appellees for his 1980 Allegro Motor Home on September 28, 1995. The rental agreement was signed by Lewis Conkey and Marlena Ward, on behalf of the corporation. Lewis Conkey did not read the contract before signing it. Subsequently, on July 28, 1996, David Conkey rented two additional parking spaces from appellees for a 1995 Pace enclosed car-trailer containing a race car, tools and equipment and for a homemade open-car hauler. Lija Eldridge signed the rental agreement on behalf of the corporation.
On February 8, 1997, appellants discovered that the trailer containing the race car, tools and equipment had been stolen from the facility. The back gate of the facility was open, and the chain securing the gate had been cut. Appellees were not home on February 8, 1997, when appellants attempted to contact them regarding the theft. When appellants did speak to appellees the next day, appellees had no information regarding the theft. Additionally, the security camera, which appellees had monitoring the front gate, did not record anything related to the theft.
Appellants filed a complaint against appellees on July 9, 1997, seeking damages arising from the theft of appellants' property stored at appellees' facility. There were problems with discovery, and the trial court granted both parties' motions to compel discovery. Appellants filed two separate motions for judgment on liability arguing that appellees should be sanctioned under Civ.R. 37(D) for failure to answer appellants' interrogatories. The trial court overruled both motions, concluding that appellees had not violated the court's order to produce discovery, that appellees had cooperated to the best of their abilities, and that the sanction was too harsh under the circumstances.
Appellees filed a motion for summary judgment on October 2, 1998. Appellants filed a memorandum contra on November 2, 1998, and appellees filed a memorandum in reply on November 25, 1998. Appellants filed a sur-reply contra on December 3, 1998, and an amended sur-reply contra on December 7, 1998. Appellees filed a supplemental memorandum on December 7, 1998. The trial court issued its decision granting appellees' summary judgment motion on December 11, 1998. Appellants filed a response to appellees' supplemental memorandum after the trial court issued its decision. Appellants then filed a timely notice of appeal.
On appeal, appellants raise six assignments of error:
 1. SUMMARY JUDGMENT IS NOT APPROPRIATE WHEN DISCOVERY REMAINS ONGOING AS A RESULT OF MOVANTS WITHHOLDING EVIDENCE.
 2. SUMMARY JUDGMENT SHOULD NOT BE GRANTED WHEN THE FACTS ARE IN DISPUTE.
 3. EXCULPATORY CLAUSES ARE NOT FAVORED IN THE LAW AND SHOULD BE STRICTLY CONSTRUED AGAINST APPELLEES.
 4. THE EXCULPATORY CLAUSE IN THE CONTEXT OF THIS CASE WAS AN UNCONSCIONABLE CONTRACT OF ADHESION.
 5. THE COURT ERRED IN HOLDING THAT AS A MATTER OF LAW, LIJA ELDRIDGE DID NOT HAVE THE AUTHORITY TO MAKE REPRESENTATIONS ON BEHLAF OF ROME-HILLIARD.
 6. THE COURT ERRED IN TERMINATING THE CASE WHEN TWO CLAIMS ARE AS YET UNTRIED.
An appellate court reviews a trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs.
(1993), 87 Ohio App.3d 704, 711. An appellate court applies the same standard as the trial court in reviewing a trial court's disposition of a summary judgment motion. Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107. Before summary judgment can be granted under Civ.R. 56(C), the trial court must determine that:
 * * * (1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. * * *
State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511
(citing Temple v. Wean United, Inc. [1977], 50 Ohio St.2d 317,327). Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the non-moving party. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 358-359.
The Supreme Court of Ohio delineated the allocation of the evidentiary burdens for the moving and the non-moving party in a summary judgment motion where the moving party asserts that the non-moving party cannot prove its case in Dresher v. Burt (1996),75 Ohio St.3d 280, 293 (interpreting Celotex Corp. v. Catrett
[1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265). InDresher, the Ohio Supreme Court held that:
 * * * [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Id. The court explained that a non-moving party cannot rest upon the allegations of the pleadings but must respond with affidavits or similar evidentiary materials demonstrating that a genuine issue of material fact exists for trial. Id., citing Civ.R. 53(E).
In appellants' first assignment of error, they assert that the trial court erred by granting appellees' summary judgment motion when discovery was not complete. We disagree.
Appellants argue that, because appellees did not comply with their discovery requests for the production of advertisements, genuine issues of material fact remain as to what representations appellees made. Appellees counter that appellants failed to request a continuance for additional discovery, as provided in Civ.R. 56(F), and that appellants were not prejudiced in that they were able to obtain a copy of the advertisement independently.
Under Civ.R. 56(F), a party facing a summary judgment motion may request additional time for discovery by filing an affidavit indicating why the party cannot present facts essential to justify his opposition to the summary judgment motion. Ohio courts have held that a failure to request a continuance for additional discovery and to comply with the provisions of Civ.R. 56(F) waives the issue on appeal. Stegawski v. ClevelandAnesthesia Group, Inc. (1987), 37 Ohio App.3d 78, 87. However, the Supreme Court of Ohio has held that Civ.R. 56(F) does not have to be complied with strictly if substantial discovery has not yet occurred and if a party in responding to the summary judgment motion indicates that more time for discovery is needed. Tuckerv. Webb Corp. (1983), 4 Ohio St.3d 121, 122-123.
Here, appellants did not file a request for a continuance or an affidavit explaining why they needed more time for discovery under Civ.R. 56(F), but appellants indicated in their memorandum contra to the summary judgment motion that summary judgment could not be granted because discovery was not complete. However, a review of the record indicates that substantial discovery had already occurred. The trial court was actively involved in the discovery process and twice overruled appellants' motions for judgment on liability as a sanction for non-compliance with discovery under Civ.R. 37(B). In a decision and entry filed November 18, 1998, the trial court acknowledged appellants' frustration with discovery but concluded that appellees had cooperated with the court and appellants to the best of their abilities. Although the issue of an undisclosed advertisement did not arise until appellees' depositions on November 30, 1998, appellants were able to obtain copies of this advertisement independently and attached it to their sur-reply contra to the motion for summary judgment, filed on December 3, 1998.
This court has held that a trial court does not abuse its discretion in granting a summary judgment motion over a request for additional discovery when the additional discovery would not aid in the resolution of the facts at issue. Glimcher v.Reinhorn (1991), 68 Ohio App.3d 131, 138, citing Ball v. HiltonHotels (1972), 32 Ohio App.2d 293, syllabus. Here, additional discovery would not have aided in the resolution of any facts at issue because appellants were able to obtain a copy of appellees' advertisement independently. Consequently, the trial court did not abuse its discretion in ruling on appellees' summary judgment motion despite appellants' contention that additional discovery was necessary. Appellants' first assignment of error is overruled.
In appellants' second assignment of error, they argue that the trial court erred by granting appellees' summary judgment motion when the facts are still in dispute. We disagree.
Appellants assert that several factual issues remain that preclude summary judgment. Specifically, appellants argue in their brief that genuine issues of material fact exist regarding the representations made by Lija Eldridge to Lewis Conkey, whether appellants' automobile racing was a hobby or a business, and regarding any representations made about security measures. Appellees counter that no genuine issues of material fact remain.
Appellants' contend that Lija Eldridge made representations to Lewis Conkey about the security features at the facility when he rented the space on September 28, 1995. However, appellees stated in their depositions that Marlena Ward was working that day while they were at the hospital. Additionally, the contract was signed by Marlena Ward on behalf of the corporation. While a factual dispute remains whether any representations were made by Lija Eldridge, the issue is not material. Appellants concede that Lija Eldridge made no representations to David Conkey when he rented the two parking spaces on July 28, 1996. Appellants state in their second amended complaint, as well as in the affidavit of David Conkey, that he rented the spaces based upon the recommendation of his father, Lewis Conkey. Because the second rental agreement between appellees and David Conkey would be the basis of any liability for the theft of appellants' property covered by that rental agreement and because no representations were made related to the second rental agreement, no genuine issue of material fact remains.
Appellants assert that their involvement in automobile racing was merely a hobby, while appellees argue that it was a business. It is undisputed that appellants engaged in automobile racing sanctioned by the National Hot Rod Association. However, the legal significance of appellants' racing activities is a question of law rather than a question of fact. Thus, no genuine issue of material fact exists regarding the fact that appellants engaged in the activity of automobile racing.
The third issue of material fact asserted by appellants concerns allegedly contradictory statements about the security measures made by appellees during the course of the litigation. Appellants assert that there is a "dispute" as to the credibility of appellees in that they made allegedly contradictory statements in their pleadings about security features. This court has held that the resolution of a summary judgment motion does not involve a determination of the credibility of witnesses. Killilea v.Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 167. Moreover, summary judgment is not appropriate where the credibility of a witness is critical to the resolution of a genuine issue of material fact, and the surrounding circumstances indicate that the credibility of the witness is questionable. Id.
However, here a determination of credibility is not necessary to the finding that there is no genuine issue of material fact regarding the security measures in place at the facility. Appellees point to page six of their summary judgment motion where they state: "As demonstrated hereinbelow, Rome Hilliard in fact was equipped with security cameras, security lights, electronic gates requiring access code for entry and 24 hour resident managers living on the premises." Later, on page nine, appellees list the equipment in place at the facility: "[S]ecurity lights, a closed circuit camera, an electronic code-activated access gate and resident managers living on the property." Appellees have consistently indicated throughout the course of the litigation that this equipment was in place at the facility, and appellants do not dispute that this equipment was at the facility at the time the spaces were rented. Although appellees argue that there is now a genuine issue of material fact, appellees' isolated use of the plural "cameras" and "gates" on page six of their motion for summary judgment does not create a genuine issue of material fact regarding the security measures in place at the facility.
Because we find that no genuine issue of material fact remains, appellants' second assignment of error is overruled.
Appellants' third and fourth assignments of error concern the validity of the exculpatory language in the rental agreement. Appellants argue that the trial court erred by not strictly construing the exculpatory clause against appellees to conclude that it amounts to an unconscionable contract of adhesion and is unenforceable. We disagree.
The rental agreement signed by David Conkey on July 27, 1996, contains exculpatory language in paragraph seven and an exclusion of warranties in paragraph eleven. Paragraph seven provides:
 7. NON-LIABILITY OF OWNER AND INSURANCE OBLIGATION OF OCCUPANT: a) Occupant, at their expense, shall obtain all insurance which occupant requires for protection of property in space. b) Occupant releases owner from all liability for personal injuries, property damage, loss from theft, vandalism, fire, water, explosion, rodent damage, or any other causes. c) Occupant agrees to indemnify and hold harmless owner, its employees or agents from any claims for damages to property or personal injury, and cost, including attorney's fees, arising from use of premises by occupant. d) Occupant must take steps necessary to safeguard personal property stored in space and keep storage spaces locked. e) If owner's employees perform any services for occupant at occupant's request, such employee shall be deemed to be agent and employee of occupant. Occupant shall notify owner immediately upon occurrence of any injury, damage, or loss suffered.
Paragraph eleven, titled "EXCLUSION OF ALL WARRANTIES," states that "[o]ccupant acknowledges owner has given no warranties other than agreement, and occupant agrees that no implied warranty's shall be effective against owner." The trial court concluded that these provisions were clear, unambiguous, valid and enforceable despite not specifically stating that the exculpatory clause included negligence. Additionally, the trial court found that the rental agreement was not an adhesion contract.
Exculpatory clauses relieving a party from its own negligence are not against public policy in Ohio, although such clauses are not favored in the law. Glaspell v. Ohio Edison Co.
(1987), 29 Ohio St.3d 44, 46; Swartzentruber v. Wee-K Corp.
(1997), 117 Ohio App.3d 420, 424. Such exculpatory clauses are to be strictly construed against the drafter unless the language is clear and unequivocal. Glaspell, at 47; Swartzentruber, at 424. In Orlett v. Suburban Propane (1989), 54 Ohio App.3d 127, 128, the Twelfth District provided a test for the enforceability of exculpatory clauses covering negligence. The court indicated that:
 Although attempts to excuse liability for negligence by contract are disfavored in the law, absent "unconscionability" or vague and ambiguous language, such limiting or exculpatory provisions will be upheld. Generally, a contract evading liability for negligence will be enforced (1) when the contracting parties stand in roughly equal bargaining positions, or (2) even if great disparity exists in the relative positions of the contracting parties, when nonexculpatory contract options are provided for a greater consideration, instead of accepting the risk of the superior party's negligence. Motorists Mut. Ins. Co. v. Jones (1966), 9 Ohio Misc. 113, 115, 38 O.O.2d 154, 156, 223 N.E.2d 381, 383.
Id. Thus, where an exculpatory clause is clearly and unambiguously stated and the contract is not unconscionable, the exculpatory clause will be enforced.
Here, we agree with the trial court that the language is clear and unambiguous. The exculpatory clause releases appellees from liability arising from various sources, including loss from theft, as well as "any other causes." Although the language does not specifically list negligence, the clear import of the language is a blanket exclusion from all liability from any source. As the trial court noted, several Ohio courts have recognized that an exculpatory clause does not have to list negligence specifically for liability arising from negligence to be excluded. Glaspell, at 47-48; Swartzentruber, at 425. As the court stated inSwartzentruber, "[t]he pivotal inquiry is whether it is clear from the general terms of the entire contract, considered in light of what an ordinary prudent and knowledgeable party of the same class would understand, that the proprietor is to be relieved from liability for its own negligence." Id. at 425. Although appellants argue that the cases not requiring the use of the word "negligence" arise only in the context of dangerous sporting activities, a careful reading of Swartzentruber indicates that the court focused on the language of the release rather than the nature of the business. Lija Eldridge's undisputed deposition testimony was that she went through the contract with David Conkey before he signed it. There is no evidence or assertion that he was under any disability which would have precluded him from understanding the terms of the rental agreement. Thus, the exculpatory language here covered negligence even though it was not specifically stated.
Additionally, we find that the rental agreement is not unconscionable. The Orlett court defined unconscionability as "the sheer harshness of contractual terms together with unequal bargaining positions which renders certain consumer contracts suspect and worthy of judicial revision." Orlett, at 129. TheOrlett court also quoted the seminal unconscionability case ofWilliams v. Walker-Thomas Furniture Co. (C.A.D.C. 1965),350 F.2d 445, 449, noting that "'[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Id.
Here, as the trial court found, the parties were in slightly unequal bargaining positions merely because appellants are individuals while appellee Rome Hilliard is a small corporation. However, there was no great disparity in bargaining power. Although appellants rely on this court's holding inBurkette v. Chrysler Industries, Inc. (1988), 48 Ohio App.3d 35,37, for the proposition that a party's bargaining power is a question of fact exclusively for a jury, thereby precluding the granting of summary judgment under any circumstances, this court merely held in Burkette that summary judgment was inappropriate because a factual dispute actually existed as to one party's business experience. Here, there is no factual dispute that appellants are individuals, while appellees operate as a corporation. Moreover, the terms of the rental agreement are not unreasonably harsh or favorable to appellees. The rental agreement merely provides that renters store their property at their own risk and advises anyone renting a space to obtain all insurance necessary to protect their property. Appellants also had the option of taking their business to another storage facility, so there was not an absence of meaningful choice.
While the rental agreement is a standardized contract, it is not a contract of adhesion. A contract of adhesion exists where one party has little or no bargaining power and has no realistic choice as to terms. Nottingdale Homeowners' Ass., Inc.v. Darby (1987), 33 Ohio St.3d 32, 37, fn. 7; Hilb, Rogal Hamilton Agency of Dayton, Inc. v. Reynolds (1992), 81 Ohio App.3d 330,339. As noted above, the parties were of slightly uneven bargaining power merely because appellees' business is a corporation. However, terms such as the duration of the lease, the rental amount, and the payment of a security deposit were left blank in the rental agreement and were apparently subject to negotiation. Additionally, as the trial court noted, there is no dearth of storage facilities in the Columbus, Ohio area, so appellants had other choices available.
Thus, as the trial court concluded, the exculpatory language in the rental agreement is valid and enforceable. Appellants' third and fourth assignments of error are overruled.
In appellants' fifth assignment of error, they argue that the trial court erred by holding as a matter of law that Lija Eldridge did not have authority to make representations on behalf of the corporation. We disagree.
It is undisputed that Lija Eldridge is general manager of the business and that she is not an officer or a shareholder. However, it is immaterial whether she had the authority or apparent authority to make any warranties. The rental agreement, which we concluded above is valid and enforceable, contains a provision specifically stating that appellees provide no warranties. Moreover, appellants concede that Lija Eldridge made no representations to David Conkey when he rented the two parking spaces on July 28, 1996. Appellants state in their second amended complaint, as well as in the affidavit of David Conkey, that he rented the spaces based upon the recommendation of his father, Lewis Conkey. Thus, the trial court did not err by dismissing the complaint against Lija Eldridge in her individual capacity. Appellants' fifth assignment of error is overruled.
In appellants' sixth assignment of error, they argue that the trial court erred in terminating the case when two claims are as yet untried. We disagree.
The trial court did not rule on whether R.C. Chapter 1345 (Consumer Sales Practices) applied to the rental agreement at issue because it found that summary judgment was appropriate. While it is preferable for a trial court to resolve all issues in ruling on a summary judgment motion, this court may address the issue as part of its independent review.
This court previously has applied landlord-tenant law to self-storage leases, which this court described as a commercial lease. Fireman's Fund Ins. Co. v. BPS Co. (1985), 23 Ohio App.3d 56,60. Because these leases are commercial, they are excluded from the definition of a "consumer transaction" under R.C.1345.01(A). This interpretation of the statute is consistent with the Supreme Court of Ohio's interpretation of R.C. 1345.01 inHeritage Hills, Ltd. v. Deacon (1990), 49 Ohio St.3d 80, 82, when the court cited to the Official Comment by the National Conference of Commissioners on Uniform State Laws for the proposition that consumer transactions do not include land transactions. This interpretation is especially true here where appellants leased land from appellees in the form of parking spaces for their camper, trailer and car carrier.
Because R.C. Chapter 1345 does not apply to these transactions, appellants' sixth assignment of error is overruled.
Based upon the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
TYACK and BROWN, JJ., concur.