**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0668n.06

**No. 12-3330**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 19, 2013
DEBORAH S. HUNT, Clerk

WHEEL SPECIALTIES, LTD, d/b/a Custom
Wheels Unlimited,

      Plaintiff-Appellant,

**v.**

STARR WHEEL GROUP, INC., et al.,

      Defendants,

**and**

NINGBO BAODY AUTO PARTS CO., LTD.,

      Defendant-Appellee.

                             /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

**BEFORE:**     **SILER, CLAY, and GIBBONS, Circuit Judges.**

**CLAY, Circuit Judge.** This appeal arises out of the second lawsuit between Plaintiff Wheel Specialties and Defendant Ningbo Baody Auto Parts. Following their first lawsuit involving Plaintiff's claims of Defendant's breach of contract, the parties entered into a Settlement Agreement which contained a mutual release of claims. The district court dismissed Plaintiff's current suit, which alleges violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq.*; and Ohio defamation law, because the district court concluded that Plaintiff had released those claims under the terms of the Settlement Agreement. For

the following reasons, we **REVERSE** the district court's dismissal of Plaintiff's claims and **REMAND** for further proceedings.

## BACKGROUND

Plaintiff Wheel Specialties, Ltd. is a designer, distributor, and seller of custom aftermarket car wheels. Plaintiff sells its wheels under a variety of registered trademarks, including MIROR ALLOYS, ROX, BIGG WHEELS, MEZZANO ALLOYS, and RADD ("Plaintiff's Marks"). In 2004, Plaintiff contracted with Chinese auto-parts manufacturer Defendant Ningbo Baody Auto Parts Co. to manufacture wheels for Plaintiff bearing Plaintiff's Marks. According to Plaintiff, Defendant, as part of the 2004 contract, agreed to produce exclusively for Plaintiff the styles that Plaintiff ordered. When Plaintiff received its April 2008 shipment of wheels, Plaintiff contended that Defendant had provided Plaintiff with defective wheels, and Plaintiff refused to accept those wheels. Plaintiff further contended that Defendant was selling the wheel styles to Plaintiff's competitors that were supposed to be exclusive to Plaintiff.

Based on these perceived breaches, Plaintiff sued Defendant in the United States District Court for the Northern District of Ohio in November 2009 for breach of contract, fraud, and related claims. At the same time, Defendant asserted, though not in any legal proceeding, that Plaintiff owed it payment for the wheels that Plaintiff had rejected. The parties settled this first lawsuit on March 6, 2010 with Defendant paying Plaintiff approximately $2000. The terms of that settlement were embodied in a Settlement Agreement, which contained a broad mutual release of claims that stated, in relevant part:

**5. Mutual Release.** In consideration of the foregoing, [Plaintiff] CWU hereby releases and discharges [Defendant] Baody and its present and former officers, directors, shareholders, employees, agents, representatives, parent companies, subsidiaries, related companies, affiliates, predecessor companies, receivers, insurers, successors and assigns (hereinafter collectively, the "Additional Releasees"), from any and all claims, actions, causes of actions, suits, debts, dues, accounts, contracts, controversies, agreements, promises, representations, or damages, including but not limited to, all consequential and incidental damages, awards, demands, expenses, including attorneys' fees, interest and costs, or judgments, whatsoever in law or in equity, which CWU ever had, now has, or hereafter may have against Baody or the Additional Releasees whether known or unknown, suspected or unsuspected, fixed or contingent, directly or indirectly arising out of, by reason of, in any way connected to the Parties' business relationship, the Lawsuit[1], the Baody Claim[2] or otherwise, or in any way connected with or arising out of any matter, act, omission, cause or event that occurred prior to the date of this Agreement except as expressly stated and reserved herein. . . .

(R. 21-1, Settlement Agreement, at PID# 169.) The Settlement Agreement also contained a corresponding "Mutual Covenant Not to Sue," which provided:

The Parties covenant and agree not to commence or prosecute any action, suit, litigation, or proceeding of any type or nature, at law or in equity, against the other Party or the Additional Releasees that arises out of, relates to, or is based upon in whole or in part any subject matter released by this Agreement, except as expressly stated and reserved herein.

(*Id*. at 170–71.)

After the execution of the Settlement Agreement, Plaintiff alleges that Defendant began selling wheels bearing Plaintiff's Marks to Plaintiff's competitors. As part of its sales pitch, Plaintiff alleges, Defendant told Plaintiff's competitors that Plaintiff was in bankruptcy and therefore there

---

[1]The Settlement Agreement defines the "Lawsuit" as claims by Plaintiff against Defendant asserted in the November 2009 suit.

[2]The Settlement Agreement defines the "Baody Claim" as the claim by Defendant against Plaintiff for failure to pay.

was no need to worry about the wheels having Plaintiff's Marks on them. Based on this alleged new conduct by Defendant, Plaintiff initiated this second lawsuit, claiming violations of the Lanham Act, the Ohio Deceptive Trade Practices Act ("ODTPA"), and Ohio defamation law.

Defendant moved for judgment on the pleadings, contending that Plaintiff's claims in this second lawsuit were covered and released by the Settlement Agreement from the first lawsuit. The district court granted Defendant's motion, concluding that "given the broad wording of the mutual release and covenant not to sue, it is hard to fathom any claim by the parties, involving the sale of wheels, that would not be barred." *Wheel Specialties, Ltd. v. Starr Wheel Grp., Inc.*, No. 4:10-cv-2460, 2012 WL 160203, at *7 (N.D. Ohio Jan. 19, 2012). The district court later certified that judgment as final pursuant to Federal Rule of Civil Procedure 54(b), and Plaintiff appealed.

## DISCUSSION

We review *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(c). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). In so doing, we "construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Vicker v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006).

As a general matter, Ohio law[3] recognizes the validity of releases of causes of actions as part of settlement agreements. *See Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990). Ohio courts apply traditional contract interpretation principles to releases, *LB-RPR REO Holdings, LLC*

---

[3]The Settlement Agreement provides that its terms "shall be governed and construed by the laws of the State of Ohio," and therefore we apply Ohio law in determining whether Plaintiff's claims can proceed. *See Medical Mut. of Ohio v. K. Amalia Enters., Inc.*, 548 F.3d 383, 391 (6th Cir. 2008).

*v. Ranieri*, No. 11AP-471, 2012 WL 2389334, at *6 (Ohio Ct. App. June 26, 2012); *accord Adams Express Co. v. Beckwith*, 126 N.E. 300, 302 (Ohio 1919), under which we are tasked with "giv[ing] effect to the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). Plaintiff contends that the claims it is now seeking to raise are not the type usually barred by a settlement release. Specifically, Plaintiff argues that the "Mutual Release" should not be construed so as to bar Plaintiff's current claims, which are premised on Defendant's conduct that postdated the execution of the release—i.e., with respect to the current claims, the "Mutual Release" is an ineffective anticipatory release.

We addressed Ohio's treatment of anticipatory releases in *AM International, Inc. v. International Forging Equipment Corp.*, 982 F.2d 989 (6th Cir. 1993). In that case, we noted that while Ohio does not regard anticipatory releases as per se void, they are subject to an "important exception to the general rule," *id*. at 995–96, that courts are to "presume that the intent of the parties is reflected in the language of the contract," *Sunoco*, 953 N.E.2d at 292. We observed that "[i]n *Sloan v. Standard Oil Co.*, 203 N.E.2d 237 (1964), the Ohio Supreme Court held that verbatim terms of a general release are not controlling under circumstances where the parties to a release did not actually intend to discharge all liability." *AM*, 982 F.2d at 996. The *Sloan* court further held that "'[w]hether the parties to a release actually intended to discharge all liability is a question of fact for the trier of the facts'" and set out factors for ascertaining the parties' intent. *Id*. (quoting *Sloan*, 203 N.E.2d at 238). Those factors are:

> The absence of bargaining and negotiating leading to settlement; the releasee is clearly liable; absence of discussion concerning the type of injuries suffered; the contention that the injuries were in fact unknown at the time the release was executed is reasonable; an inadequate amount of consideration received compared with the risk

5

of the existence of unknown injuries; haste by the releasee in securing the release; and the terms of the release exclude the injuries alleged.

*Id*. (quoting *Sloan*, 203 N.E.2d at 240) (alteration omitted). In *AM*, we remanded the case for the district court to take more evidence and evaluate the *Sloan* factors. *Id*. at 997.

In the years since *AM*, the Ohio courts have continued to be wary of enforcing anticipatory releases. In *Denlinger v. City of Columbus*, the Ohio Tenth District Court of Appeals stated, "Releases from liability for future tortious conduct . . . are generally not favored by the law and will be narrowly construed." 2000 WL 1803923, at *6 (Ohio Ct. App. Dec. 7, 2000) (citing *Swartzentruber v. Wee-K Corp.*, 690 N.E.2d 941, 944 (Ohio Ct. App. 1997)) (additional citations omitted). Synthesizing the Ohio case law, the *Denlinger* court concluded that anticipatory releases can only be enforced if the future conduct to be released is "stated in clear and unambiguous terms" and notes "exactly what kind of liability and what persons and/or entities are being released." *Id.*; *accord Geczi v. Lifetime Fitness*, 973 N.E.2d 801, 805 (Ohio Ct. App. 2012). Additionally, "where the language of the release is ambiguous or too general, courts have held that the intent of the parties is a factual matter for the jury." *Denlinger*, 2000 WL 1803923, at *6 (citing *Bowman v. Davis*, 356 N.E.2d 496, 498 (Ohio 1976)). *AM*, *Denlinger*, and the cases cited in each counsel against resolving issues concerning anticipatory releases at the pleading stage when the district court is unable to take evidence or find facts. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403, 405 (6th Cir. 2012) ("In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff [and] accepts the plaintiff's factual allegations as true. . . . A district court generally may only consider matters outside the pleadings if they treat the motion [to dismiss] as one for summary judgment under Rule 56."(internal quotation marks omitted)).

Looking at the language of the "Mutual Release," it releases "any and all claims . . . which [Plaintiff] ever had, now has, or hereafter may have against [Defendant] or the Additional Releasees whether known or unknown, suspected or unsuspected, fixed or contingent, directly or indirectly arising out of, by reason of, in any way connected to the Parties' business relationship, the Lawsuit, the Baody Claim or otherwise . . . ." This language is undeniably broad, but Plaintiff's allegations are that Defendant began selling products bearing Plaintiff's Marks to Plaintiff's competitors after the date of the Settlement Agreement. It is difficult to read this language as encompassing "exactly th[at] kind of liability," which is what Ohio courts would require in order to give effect to such an anticipatory release. *See Denlinger*, 2000 WL 1803923, at \*6.

Moreover, looking to the *Sloan* factors, a number of them cut against construing the release to cover Plaintiff's current claims. First, the "injuries [alleged] were in fact unknown" to Plaintiff when the Settlement Agreement was executed. Second, because the injuries were unknown, there is an "absence of discussion [in the Settlement Agreement] concerning the type of injuries" Plaintiff now alleges. Finally, the two thousand dollars that Plaintiff received seems like "an inadequate amount of consideration received compared with the risk of" Plaintiff being found to have effectively transferred to Defendant the right to use Plaintiff's Marks. In sum, while broad, we do not think that language of the "Mutual Release" was sufficiently specific to definitively conclude, at this stage, that it was the parties' intent to waive the claims that Plaintiff now alleges. *See AM*, 982 F.2d at 997.

Beyond its lack of specificity against the backdrop of Ohio's general disfavor towards anticipatory releases, there is another reason to think that Ohio law would not give effect to the "Mutual Release" to bar Plaintiff's claims. Ohio courts have found that "release provisions . . . do

not relieve the [releasee] from liability due to wanton or willful misconduct." *Geczi*, 973 N.E.2d at 805; *see also Bowen v. Kil-Kare, Inc.*, 585 N.E.2d 384, 390 (Ohio 1992). While Ohio has not precisely delineated what "wanton" and "willful" mean in this context, the Ohio Supreme Court recently concluded that it "involve[s] conduct that is more than negligent." *Anderson v. Massillon*, 983 N.E.2d 266, 275–76 (Ohio 2012). This definition comports with Black's Law Dictionary, which defines "willful and misconduct" as being "committed with an intent[] or reckless[ness]." *See* Black's Law Dictionary 1089 (9th ed. 2009).

Reading Plaintiff's complaint in the light most favorable to it, Plaintiff alleges four claims in its complaint, each of which contain an allegation that rises, at least, to the level of "wanton or willful misconduct." For example, in its Lanham Act claims (claims 1 and 2), Plaintiff alleges that Defendant "willfully and deliberately infringed" Plaintiff's Marks through "intentional acts." (R. 1, Compl. at PID# 13–15.) Additionally, in Plaintiff's defamation claim, it alleges that Defendant knowingly "or, at the very least, negligent[ly]" made false statements about Plaintiff's financial condition. (*Id*. at 17.) These intentional tort claims are ones against which Ohio courts will not allow an anticipatory release to be effective. *See Peitsmeyer v. Jackson Tp. Bd. of Trustees*, No. 02AP-1174, 2003 WL 21940713, at *4 (Ohio Ct. App. Aug. 14, 2003) ("Ohio law is equally clear that a release is invalid as to willful and wanton misconduct."); *cf. Zivich v. Mentor Soccer Club, Inc.*, 696 N.E.2d 201, 208 (Ohio 1998) (finding, on summary judgment, that the plaintiffs had "failed to produce sufficient evidence to present a jury question on the claim of willful and wanton misconduct" and therefore enforcing a release).

Under Ohio law, courts will only give effect to anticipatory release where the parties express a clear and specific intent to release such claims. *Denlinger*, 2000 WL 1803923, at *6. This is especially true where a release purports to release a party from liability based on that party's willful or wanton misconduct. *See Geczi*, 973 N.E.2d at 805 (Ohio Ct. App. 2012). To the extent Plaintiff's complaint is alleging intentional conduct, it is clear that the "Mutual Release" is ineffective to do so. Further, when the language of the "Mutual Release" is considered alongside the *Sloan* factors, we cannot say, at this stage, that the parties evinced an unambiguous and specific intent to release the claims Plaintiff now seeks to raise. Therefore, we conclude that the district court erred in dismissing Plaintiff's complaint on the pleadings based on the Settlement Agreement.

## CONCLUSION

For the following reasons, we **REVERSE** the district court's dismissal of Plaintiff's claims and **REMAND** for further proceedings.