BROWN, Appellant,

v.

COLUMBUS ALL–BREED TRAINING CLUB et al., Appellees.

[Cite as Brown v. Columbus All–Breed Training Club, 152 Ohio App.3d 567, 2003-Ohio-2057.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–670.

Decided April 24, 2003.

Law Offices of Richard Troxell, L.L.C., and Richard H.H. Troxell, for appellant.

Keener, Doucher, Curley & Patterson, L.P.A., Kevin R. Bush and Jenifer J. Murphy, for appellees Columbus All–Breed Training Club and Marsha Duffy.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Thomas E. Boyle and Mark C. Melko, for appellee Judith Vinch.

---

McCormac, Judge.

{¶ 1} Plaintiff-appellant, Molly Brown, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Judith Vinch, Columbus All–Breed Training Club, and Marsha Duffy.

{¶ 2} On November 23, 1999, plaintiff and Vinch, together with their dogs, attended a canine obedience class conducted by Columbus All–Breed Training Club ("CATC"). The class was taught by Duffy and was held in a square-shaped pen approximately 50 feet by 50 feet in size and enclosed by expandable gates.

{¶ 3} As part of the class, Duffy had the class perform an exercise known as the "chase." The "chase" is begun with a student standing and the dog being trained sitting on the student's immediate left. When the instructor gives the "forward" command, the student says her dog's name, gives the "heel" command, and both the student and dog begin walking forward. After the student and dog have taken several steps, the instructor gives the "chase" command. Upon hearing the "chase" command, the student turns around so that she is directly in front of and facing the dog and begins to walk quickly backwards away from her dog. As the student walks backwards, she says the dog's name and gives the "come" command. If the dog performs the exercise correctly, it "comes" quickly to the student.

{¶ 4} In the present case, Duffy explained and demonstrated the "chase" to the class before having the class perform the exercise. In addition, in order to ensure that there was enough room in the enclosure to perform the exercise, Duffy divided the class of approximately 12 people and their dogs into two groups: the practice group and the waiting group. The practice group was instructed to move to one side of the enclosure to perform the exercise. The waiting group was instructed to move to the opposite side of the enclosure and watch the practice group. Plaintiff was in the waiting group, and Vinch was in the practice group. In order to perform the exercise, the students in the practice group stood along one wall of the enclosure with their dogs sitting next to them on their respective lefts, and with both the students and their dogs facing the waiting group on the opposite side of the enclosure. On Duffy's command, the students in the practice group began to perform the "chase" with their dogs. In the course of performing the "chase," Vinch collided with plaintiff while backing away from her dog. The collision knocked plaintiff to the ground, seriously fracturing her left elbow. A dispute of fact exists regarding exactly how the collision between Vinch and Brown occurred. That dispute, however, is not relevant to this appeal.

{¶ 5} On March 28, 2001, plaintiff instituted a personal injury action against CATC, Duffy, and Vinch in the Franklin County Court of Common Pleas. On February 28, 2002, CATC and Duffy filed a joint motion for summary judgment. On March 26, 2002, Vinch filed a motion for summary judgment. On May 22, 2002, the trial court issued a decision and entry granting summary judgment to Vinch on the basis of the recreational activity rule announced in *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, and granting summary judgment to CATC and Duffy on the basis of a release executed by plaintiff when she enrolled in the dog obedience course. Plaintiff appeals from the trial court's decision and entry assigning the following error:

{¶ 6} "The trial court erred to the substantial prejudice of plaintiff-appellant Molly Brown in entering summary judgment for defendants-appellees Columbus All–Breed Training Club, Judith Vinvch [sic], and Marsha Duffy."

{¶ 7} Because plaintiff's assignment of error arises out of the trial court's ruling on motions for summary judgment, we review the trial court's determination independently and without deference. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. In conducting our review, we apply the same standard as did the trial court, *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765: in accordance with Civ.R. 56, summary judgment may be granted only if, viewing the evidence most strongly in favor of the nonmoving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come only to a conclusion that is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 8} In moving for summary judgment, a party must inform the court of the basis of the motion and identify portions in the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. Once the moving party has made its initial showing, the nonmoving party, in order to avoid summary judgment, must produce evidence on any issues identified by the moving party for which the nonmoving party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

{¶ 9} Plaintiff first argues that the trial court erred in granting summary judgment to Vinch based on the recreational activity rule announced in *Marchetti*, supra. In *Marchetti*, the plaintiff brought a negligence claim against a neighborhood playmate who injured her while the two were engaged in a game of "kick the can" with other neighborhood children. In holding that plaintiff could not maintain her cause of action, the Ohio Supreme Court held:

{¶ 10} "Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." Id. at the syllabus.

{¶ 11} In *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, which was decided the same day as *Marchetti*, the Ohio Supreme Court elaborated upon its holding in *Marchetti*. Specifically, in holding that the plaintiff could not maintain her cause of action for injuries sustained when she was hit by a golf ball while playing golf, the *Thompson* court held:

{¶ 12} "1. Between participants in a sporting event, only injuries caused by intentional conduct, or in some instances reckless misconduct, may give rise to a cause of action. There is no liability for injuries caused by negligent conduct * * *.

{¶ 13} "2. A player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct." *Thompson,* at paragraphs one and two of the syllabus.

{¶ 14} It may be that dog training constitutes a recreational activity for application of the doctrines of *Marchetti* and *Thompson.* See *Fout v. The Ins. Co. of Evanston* (June 30, 1997), Franklin App. No. 96APE12–1680, 1997 WL 359332 (holding that horse training constituted a recreational or sporting activity for purposes of *Marchetti*). Plaintiff contends that, even if it is, the trial court erred in granting Vinch summary judgment based on the recreational activity rule because a question of fact exists over whether Vinch acted recklessly in backing into her. In *Marchetti,* the Ohio Supreme Court stated that an individual acts recklessly if " 'he does an act * * * knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Marchetti,* 53 Ohio St.3d at 104–105, 559 N.E.2d 699 (quoting 2 Restatement of the Law 2d, Torts [1965] 587, Section 500). In the present case, there is no evidence from which a jury could find that Vinch acted recklessly in backing into plaintiff. While it may be that backing up without looking could be considered reckless in some circumstances, here, backing up was an integral part of the dog-training exercise that was being taught. The students in both the waiting group and the practice group were aware that backing up was part of the exercise. Additionally, Duffy testified at her deposition that, during her more than ten years of dog training, she had never seen two students collide prior to the collision that injured plaintiff. Accordingly, even if Vinch backed up much faster and farther than was necessary to perform the "chase," as plaintiff contends, a jury could not find that she acted in a manner that she knew or should have known posed an unreasonable risk of physical harm to another and a risk that was substantially greater than that which would be necessary to make her actions negligent.

{¶ 15} While it is clear that Vinch did not act recklessly, the question of whether plaintiff's injury was a foreseeable and customary part of dog training remains. In *Barnhart v. Jackson* (Mar. 2, 1995), Franklin App. No. 94APE08–1124, 1995 WL 89813, this court held that the plaintiff could not maintain a negligence action for an eye injury he received when a fellow fisherman yanked his fishing lure free from a tree where it was snagged, because being hit by a

fishing lure was a foreseeable risk of fishing. In so holding, we noted that the deposition testimony of both the plaintiff and the defendants indicated that it was a common practice for fishermen to attempt to free a snagged lure by pulling on their fishing lines. Id. In contrast, here there is no evidence in the record that suggests that getting knocked to the ground by another student is a foreseeable or customary risk of dog training. In fact, the only evidence on this issue (Duffy's testimony that she had never before seen two students collide) suggests that such an occurrence is neither a foreseeable nor a customary part of dog training. Consequently, the trial court erred in granting summary judgment for Vinch based on the recreational activity rule.

{¶ 16} Plaintiff next argues that the trial court erred in granting summary judgment for CATC and Duffy, as the release on which the trial court relied is ambiguous. The release in question provides:

{¶ 17} "In consideration of the acceptance of this application and entering the dog in the classes, I hereby agree to hold the **COLUMBUS ALL–BREED TRAINING CLUB, INC.**, its members, trustees, governors, officers, aagents [sic], superintendents, committees, and or members thereof, and all employees of said club holding classes herein above mentioned, and all persons connected with ro [sic] associated with said club, in whatever capacity, **HARMLESS FROM:** 1.) any loss of [sic] injury which may occur to any person or thing by any biting by, or to any other act of, the said dog or dogs while in or upon the premises or grounds, or in, or at or near any entrance or entrances or exists [sic] thereto, whether or not and when the said dog or dogs is or are being delivered or removed or otherwise handled, and personally to assume full responsibility and liability therefore, and 2.) the disappearance and/or loss by Theft [sic] or otherwise, and/or the death of the said dog or dogs herein above named, *and/or all damages, injury or injuries, damage and/or damages is or are caused by negligence or carelessness of said Club in any manner, or by any person or persons connected with the said Club in any manner,* or by any person or persons and/or by any other cause or causes directly or indirectly operating while such person or persons and/or dog or dogs is or are on the Club premises." (Emphasis added.)

{¶ 18} Initially, we note that the above "release" was poorly drafted and even more poorly edited. Actually, although it is titled a release, it reads more like an indemnity agreement than a release of a personal injury claim. Even as an indemnity agreement, it falls short of a clear and understandable document. Relying on the italicized language of the so-called release, the trial court concluded that the release "clearly and unambiguously" absolved CATC and Duffy from any negligence which may have caused or contributed to plaintiff's injury. In order to determine whether the terms in a contract are ambiguous, a court must generally give words and phrases their plain, ordinary, or common

meaning. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347. If a contract is clear and unambiguous, its interpretation is a matter of law, and there is no issue of fact. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. However, where the language of a contract is reasonably susceptible of more than one interpretation, the meaning of ambiguous language is a question of fact. *Ohio Historical Soc. v. Gen. Maintenance & Engineering Co.* (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340.

{¶ 19} Here, when the language relied upon by the trial court is read in isolation, it appears to be a general "Hold Harmless" for liability arising out of any negligence or carelessness of CATC or anyone associated with it. However, that general language cannot properly be read in isolation, but must be read in the context of the entire "release." *Youngstown State Univ. Assn. of Classified Emp. v. Youngstown State Univ.* (1994), 99 Ohio App.3d 199, 201–202, 650 N.E.2d 167. When the general language quoted above is read in context, it is patently unclear how the language was intended to relate to the two enumerated classes of loss set forth in the release: (1) those caused by a dog in training; and (2) those resulting from the disappearance or loss of a dog in training. Accordingly, we must turn to the rules of contract construction to aid us in determining the intent of the release. In particular, the rule of ejusdem generis, which requires that general contract terms that follow an enumeration of specific terms be construed with reference only to the specific terms, *In re Foreclosure of Liens For Delinquent Taxes* (May 28, 1999), Clark App. No. 98CA75, 1999 WL 335131, is helpful in this case. When ejusdem generis is applied to the general release language, it becomes clear that a question of fact exists as to whether the general "Hold Harmless" language was intended to provide a general release for all damages or was merely intended to provide a general release for damages arising from one of the two enumerated classes of loss. In summary, even if the agreement is considered to be a release, it is insufficient to give clear notice to the signer (plaintiff) that she has waived all prospective rights to compensation from any negligent activity on the part of CATC and Duffy. Exculpatory provisions for prospective negligence are to be strictly construed. *Swartzentruber v. Wee–K Corp.* (1997), 117 Ohio App.3d 420, 690 N.E.2d 941. Accordingly, the trial court erred in granting summary judgment for CATC and Duffy.

{¶ 20} Plaintiff's assignment of error is sustained, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

Bowman and Klatt, JJ., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.