KONESKY et al., Appellants,

v.

WOOD COUNTY AGRICULTURAL SOCIETY et al., Appellees.

[Cite as *Konesky v. Wood Cty. Agricultural Soc.*, 164 Ohio App.3d 839, 2005-Ohio-7009.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–05–032.

Decided Dec. 30, 2005.

840

Paul T. Belazis, for appellants.

Larry P. Meyer, for appellees.

Sκow, Judge.

{¶ 1} Plaintiffs-appellants, Rose Konesky and her husband, John Konesky, appeal from an order by the Wood County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Wood County Agricultural Society et al. For the reasons that follow, the judgment of the trial court will be reversed.

{¶ 2} On July 30, 2002, 82-year-old Rose Konesky was injured when, during a harness race at the Wood County Fair, a horse that had thrown its driver ran through an opening in the fence surrounding the track and trampled her.

{¶ 3} There were several openings in the fence surrounding the track. At least one of those openings was gated and remained closed at all times. The opening at the western end of the track, however, had no gate. It was from this opening that the runaway horse emerged.

{¶ 4} At the time of the accident, Mrs. Konesky was standing outside the track in a grassy area well away from the opening in the fence. She was loading horse-grooming equipment into her truck and getting ready to go home, following her own horse's participation in an earlier race. In the vicinity were tents, parked vehicles, and vendors, including a food stand that serviced the public. Although horseracing participants and vendors who primarily serviced those participants were present at the location, access to the area was in no way restricted to those individuals. Families who had come to the fair routinely walked through with their children. A nearby tent had tables and chairs where anyone could enjoy a meal or just sit and rest.

{¶ 5} When the horse in question emerged from the opening in the fence, dragging its riderless sulky, it struck and injured several other adults, in addition to Rose Konesky. One little girl, upon seeing her mother struck, started to scream.

{¶ 6} This was not the first time that a bystander was injured while standing outside the western opening of the fence. In 1974, a runaway horse ran through the same opening, striking and injuring a bystander who was outside the track. Following this incident, fair officials instituted precautions to ensure the future safety of fair patrons. All the openings in the fence were gated, and fair officials made certain that the gates remained closed whenever a race was in progress. In addition, a sheriff's deputy was posted at the western gate (which was typically used to allow horses on and off the track) to ensure that it remained closed during each race.

{¶ 7} Efforts made by fair officials to ensure the safety of bystanders diminished over time. Over a period of years, the practice of posting sheriff's deputies was discontinued. The gates were again left open during the course of a race. Eventually, the gates on the western end of the track were removed, and the opening was enlarged to make room for semitrailers participating in tractor pulls. The gates were never replaced and no other barriers were erected to prevent an errant horse from leaving the track.

{¶ 8} Although the Ohio State Racing Commission ("commission") has promulgated no formal rule specifically requiring that fence openings be gated, testimony by appellants' expert, Douglas A. Thomas, establishes that at the time of the accident, the absence of a barrier during harness races at the Wood County Fair was contrary to the longstanding and strong recommendations of the commission and, further, was at odds with the practice of various other county fairs.

{¶ 9} On July 29, 2003, appellants filed their action against appellees to recover damages sustained during the July 30, 2002 harness race. Appellees subsequently filed a motion for summary judgment. On March 29, 2005, the trial court filed an entry that granted summary judgment in favor of appellees on the grounds that appellants' claims were barred by the doctrine of primary assumption of the risk. Appellants timely appealed this judgment, asserting the following assignments of error:

{¶ 10} I. "The common pleas court erred by determining that the doctrine of primary assumption of the risk barred appellant's recovery.

{¶ 11} II. "The common pleas court erred by determining that there was no issue of fact as to whether appellee's conduct was reckless."

{¶ 12} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Civ.R. 56(C) provides:

{¶ 13} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts

of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

{¶ 14} Summary judgment is proper where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. *Ryberg v. Allstate Ins. Co.* (July 12, 2001), 10th Dist. No. 00AP–1243, 2001 WL 777121, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936.

{¶ 15} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once this burden has been satisfied, the nonmoving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.

{¶ 16} We begin with an examination of appellants' first assignment of error, wherein appellants argue that the doctrine of primary assumption of the risk is inapplicable to the facts of this case.

{¶ 17} In applying the doctrine of primary assumption of the risk to sports and recreational activities in particular, the Supreme Court of Ohio has held: " 'Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either "reckless" or "intentional" as defined in Sections 500 and 8A of the Restatement of Torts 2d.' " *Gentry v. Craycraft,* 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, at ¶ 6, quoting *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, syllabus. Underlying the doctrine is the notion that some risks are so inherent in an activity that the risks cannot be eliminated. *Gehri v. Capital Racing Club, Inc.* (June 12, 1997), 10th Dist. No. 96APE10–1307, 1997 WL 324175, citing *Collier v. Northland Swim Club* (1987), 35 Ohio App.3d 35, 37, 518 N.E.2d 1226.

{¶ 18} Primary assumption of the risk is actually "an alternative expression for the concept that a defendant either owed no duty of care to the plaintiff or did not breach any duty owed. * * * Primary assumption of risk has nothing to do with plaintiff's conduct." *Mima v. Akron* (1986), 31 Ohio App.3d 124, 125, 508 N.E.2d 974. (Citations omitted.)

{¶ 19} The types of risks that are covered under the doctrine are those that are the foreseeable and customary risks of the sport or recreational activity. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–106, 559 N.E.2d 705. In addition, "only those risks *directly associated* with the activity in question are within the scope of primary assumption of risk * * *." (Emphasis added.) *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 432, 659 N.E.2d 1232. To be covered under the doctrine, the risk must be one that is so inherent to the sport or activity that it cannot be eliminated. See *Westray v. Imperial Pools and Supplies* (1999), 133 Ohio App.3d 426, 432, 728 N.E.2d 431; *Marckel v. Raceway Park, Inc.* 6th Dist. No. L–02–1361, 2003-Ohio-3989, 2003 WL 21716187. "Because of the great impact a ruling in favor of a defendant on primary assumption of risk grounds carries, a trial court must proceed with caution when contemplating whether primary assumption of the risk completely bars a plaintiff's recovery." *Gallagher*, 74 Ohio St.3d at 432, 659 N.E.2d 1232.

{¶ 20} Courts have held that where the risk is not one that is inherent, the doctrine of primary assumption of the risk does not apply, and, instead, ordinary negligence standards are used. See Id. at 432; *Pope v. Willey*, 12th Dist. No. CA2004–10–077, 2005-Ohio-4744, 2005 WL 2179317, ¶ 12–16. For instance, in *Goffe v. Mower* (Feb. 5, 1999), 2d Dist. No. 98–CA–49, 1999 WL 55693, the court found that a faulty racetrack design was not an inherent risk of go-cart racing. There, the court held that "[a] reasonable jury could find that the [defendants] breached their duty of ordinary care to [plaintiff] by designing an amusement ride which created an unreasonable danger that the rider would be injured while exiting the ride but before reaching a place of safety." Id., citing *Ashcroft v. Calder Race Course* (Fla.1986), 492 So.2d 1309 (holding that riding a horse on a racetrack with a negligently placed exit gap was not an inherent risk for jockeys in the sport of horse racing.)

{¶ 21} In *Brown v. Columbus All–Breed Training*, 152 Ohio App.3d 567, 2003-Ohio-2057, 789 N.E.2d 648, the court found that the risk of getting knocked to the ground by another person was not a customary and foreseeable risk of a dog-training exercise. And in *Evans v. Wills* (Dec. 27, 2001), 10th Dist. No. 01AP–422, 2001 WL 1652665, the court found that being struck by a bicycle while on the walking lane of a park path was not an inherent risk of walking. Finally, in *Pope v. Willey*, 2005-Ohio-4744, 2005 WL 2179317, the court determined that collision with a pick-up truck on a public road was not part of the inherent risk of ATV riding.

{¶ 22} In the instant case, we find that the risk of being trampled by a runaway horse that has come off a racetrack through a negligently placed or permitted gap in the surrounding fence is not an inherent risk of horse racing. Therefore, the doctrine of primary assumption of the risk is inapplicable herein.

{¶ 23} We further find that a reasonable jury could conclude in this case that appellees breached their duty of ordinary care to appellants by allowing the gate through which the runaway horse emerged to remain open, thereby creating an unreasonable danger that someone located outside of the racetrack would be trampled. Although this finding precludes an entry of summary judgment in this case, it does not preclude a finding by a jury that Mrs. Konesky's willingness to accept the risk arising from the open gate amounted to contributory negligence. Thus, we make no determination concerning the ultimate success of appellants' claims.

{¶ 24} Because we find that appellants' claims are neither barred by primary assumption of the risk nor otherwise subject to summary judgment, appellants' first assignment of error is well taken.

{¶ 25} In their second assignment of error, appellants contend that the trial court erred in concluding that there was no issue of fact as to whether appellees' conduct was reckless. As discussed in the first assignment of error, the applicable standard is that of ordinary negligence, not recklessness. Accordingly, appellants' second assignment of error is found not well taken.

{¶ 26} The judgment from which this appeal is taken is reversed and remanded to the trial court for further proceedings. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment reversed.

SINGER, P.J., and PARISH, J., concur.