**KELLY, Appellant,**

v.

**ROSCOE et al., Appellees.**

[Cite as *Kelly v. Roscoe*, 185 Ohio App.3d 780, 2009-Ohio-4279.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 08 MA 176.

Decided Aug. 14, 2009.

Frank N. Fagnano, for appellant.

Comstock, Springer & Wilson Co., L.P.A., and William Scott Fowler, for appellees.

WAITE, Judge.

{¶ 1} Appellant, Kaitlin Kelly, a minor, by and through her mother and next friend, Cindy Clark, appeals the summary judgment entered against her and in favor of appellees, Scott and Dawn Roscoe, by the Mahoning County Court of Common Pleas in this negligence action. Appellant broke her leg while playing on a trampoline with two other children at a Fourth of July party hosted by appellees. Because the record does not contain any evidence to support the

conclusion that appellant's injuries were the result of anything other than the ordinary risks associated with using a trampoline with other children, the judgment of the trial court is affirmed.

### Facts

{¶ 2} Several depositions are on file in this case and provide a fairly replete factual record. On July 4, 2007, appellant, who was seven years old at the time, and her parents, Cindy Clark and Donald Kelly, were guests at a Fourth of July party hosted by appellees. Appellees have a trampoline, which Kelly described as "older-style," in their back yard. When asked to explain what he meant by the characterization, Kelly said, "When they first came out with the trampoline, it was more of a hard bounce to it. The netting wasn't as flexible as they do them now. It was like more of a—like a harder bounce, like tighter. It was tight." Appellees placed a sliding board with a ladder next to the trampoline so that the ladder portion of the slide could be used to climb onto the trampoline.

{¶ 3} Appellant admitted that her parents told her that she was not permitted to use the trampoline that day and that they had told her on prior occasions that she was not permitted to use it. Kelly said that he did not want appellant on the trampoline because it had no net around it and because he did not like her to use it at the same time as the older children. Nevertheless, appellant used the trampoline three times that day.

{¶ 4} The first and second time she was on the trampoline with Nicky and Michael. Clark saw appellant on the trampoline the second time and insisted that she get off. Clark then explained to Michael that he was too big to be on the trampoline with "the little ones." The third time, when appellant's injury occurred, she was on the trampoline with Nicky and Alyssa. According to Kelly, Nicky is appellant's age and Alyssa is a little older.

{¶ 5} Despite her parents' admonitions that day and in the past, appellant approached them separately to ask permission to use the trampoline prior to using it the second and third time. Each time, both of her parents said "no." She admitted that she first ascertained that her parents were not around before getting on the trampoline the third time. Kelly and Clark conceded that they were not watching her when she was on the trampoline with Nicky and Alyssa.

{¶ 6} Appellant was on the trampoline for a short time when, as she described it, Alyssa "bounced [her] up." Appellant landed on her left leg, which emitted an audible crack. Appellant provided the only testimony regarding the circumstances surrounding her injury.

{¶ 7} After the accident, Clark testified, she asked Nicky and Alyssa to describe how appellant had been injured, but "[t]hey both looked white as a ghost" and neither could say what had happened.

{¶ 8} Clark and Kelly took appellant to St. Elizabeth's Hospital, where she was diagnosed with a fractured femur. On September 27, 2007, appellant, through her mother, filed the complaint in this action, asserting that she had been injured as a result of appellees' "negligent supervision of the trampoline." On November 13, 2007, appellees filed their answer and a third-party complaint against Clark for contribution, alleging that she had failed to properly supervise appellant.

{¶ 9} On April 28, 2008, appellees filed a motion for summary judgment based upon the Ohio Supreme Court's holding in *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116. In that case, the court held that a plaintiff injured as a participant or a spectator in a sport or recreational activity, regardless of his age or his ability to appreciate the inherent risks, must demonstrate reckless or intentional conduct on the part of the defendant in order to recover damages. Id. at syllabus.

{¶ 10} On July 25, 2008, appellant filed her brief in opposition. She argued that the doctrine of primary assumption of the risk applied in *Gentry* should not apply in this case, because the risk she encountered was not inherent in the activity of jumping on a trampoline. She further argued that *Gentry*'s standard of "reckless or intentional" was inapplicable in the case sub judice and that the trial court should apply the ordinary negligence standard.

{¶ 11} On August 4, 2008, the trial court granted summary judgment, finding that "the Defendants [sic] motion for summary judgment is well taken, and there is no genuine issue of fact that exists; and therefore, the Defendants are entitled to judgment as a matter of law." This timely appeal followed.

### Standard of Review

{¶ 12} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court, as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. Id.

{¶ 13} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element*

*of the nonmoving party's claim."* (Emphasis sic.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party carries its burden, the nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, in the face of a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.

## Law

{¶ 14} To establish a claim of negligence in Ohio, a plaintiff must show the existence of a duty, a breach of that duty, and injury directly and proximately resulting from a breach of the duty. *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. The existence of a duty in a negligence action is a question of law. *Wallace v. Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22.

{¶ 15} However, "[w]here individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Section 500 and 8A of the Restatement of Torts 2d." *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, at syllabus. The types of risks that are covered under the doctrine are those that are the foreseeable and customary risks of the sport or recreational activity. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–106, 559 N.E.2d 705.

{¶ 16} Primary assumption of the risk is the judicially created affirmative defense whereby a defendant owes no duty to protect a plaintiff against certain risks that are so inherent in an activity that they cannot be eliminated. *Sproles v. Simpson Fence Co.* (1994), 99 Ohio App.3d 72, 78, 649 N.E.2d 1297. In contrast, implied or secondary assumption of the risk refers to those instances in which a defendant owes some duty of care, but the plaintiff voluntarily consents to or acquiesces in an appreciated, known, or obvious risk created by the breach of the defendant's duty of care. Id.

{¶ 17} Primary assumption of the risk is a complete bar to recovery because the essential element of duty is negated. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114, 6 OBR 170, 451 N.E.2d 780. Secondary assumption of the risk is subsumed under Ohio's comparative-negligence scheme and does not act as a bar to recovery unless the plaintiff's negligence in consenting to the risk is greater than the defendant's negligence. Id. at 113, 6 OBR 170, 451 N.E.2d 780; R.C. 2315.19.

{¶ 18} The doctrine of primary assumption of the risk has historically been applied in cases involving sporting events. *Anderson* at 114, 6 OBR 170, 451 N.E.2d 780. However, because the primary assumption of the risk is a complete bar to recovery, the Supreme Court has limited its application:

{¶ 19} "[O]nly those risks directly associated with the activity in question are within the scope of primary assumption of risk, so that no jury question would arise when an injury resulting from such a direct risk is at issue, meaning that no duty was owed by the defendant to protect the plaintiff from that specific risk. In many situations * * * there will be attendant circumstances that raise questions of fact whether an injured party assumed the risk in a particular situation. In that case, the doctrine of implied assumption of risk, not primary assumption of risk, would be applicable." *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 432, 659 N.E.2d 1232.

{¶ 20} To be covered under the doctrine, the risk must be one that is so inherent to the sport or activity that it cannot be eliminated. See *Westray v. Imperial Pools & Supplies* (1999), 133 Ohio App.3d 426, 432, 728 N.E.2d 431. Courts have held that where the risk is not one that is inherent, the doctrine of primary assumption of the risk does not apply, and, instead, ordinary negligence standards are used. Id. at 432, 728 N.E.2d 431; *Aber v. Zurz*, 175 Ohio App.3d 385, 2008-Ohio-778, 887 N.E.2d 381 (falling off a tube and sustaining facial injuries not a foreseeable risk of tubing at a safe speed); *Aquila v. LaMalfa*, 11th Dist. No. 2005–L–148, 2007-Ohio-689, 2007 WL 1125724 (collision between two players not a customary part of activity of sack racing); *Coblentz v. Peters*, 11th Dist. No. 2004–T–001, 2005-Ohio-1102, 2005 WL 583793 (being struck by a golf cart not an ordinary risk of golfing); *Konesky v. Wood Cty. Agricultural Soc.*, 164 Ohio App.3d 839, 844, 2005-Ohio-7009, 844 N.E.2d 408 (risk of being trampled by runaway horse that has come off racetrack through negligently placed or permitted gap in the surrounding fence not an inherent risk of horse racing); *Pope v. Willey*, 12th Dist. No. CA2004–10–077, 2005-Ohio-4744, 2005 WL 2179317 (collision with a pickup truck on a public road not part of the inherent risk of ATV riding); *Brown v. Columbus All–Breed Training*, 152 Ohio App.3d 567, 2003-Ohio-2057, 789 N.E.2d 648 (risk of getting knocked to the ground by another person not a customary and foreseeable risk of dog training); *Evans v. Wills* (Dec. 27, 2001), 10th Dist. No. 01AP–422, 2001 WL 1652665 (being struck by a bicycle while on the walking lane of a park path not an inherent risk of walking); *Goffe v. Mower* (Feb. 5, 1999), 2d Dist. No. 98–CA–49, 1999 WL 55693 (faulty racetrack design was not an inherent risk of go-cart racing).

### ASSIGNMENT OF ERROR

{¶ 21} "The trial court erred in granting defendant/appellee [sic] Scott and Dawn Roscoe's motion for summary judgment."

{¶ 22} In her sole assignment of error, appellant contends that the trial court erred in applying the primary-assumption-of-the-risk doctrine, instead of the implied-assumption-of-the-risk doctrine. Although she concedes that trampoline use is a recreational activity, she argues that "the risk of being bounced up on a trampoline and landing on a hard, inflexible surface is not one that is inherent and foreseeable to the activity." Consequently, she asserts that the trial court erred in applying the "reckless or intentional" standard instead of the general negligence standard.

{¶ 23} Appellant relies almost exclusively on the Twelfth District Court of Appeals' holding in *Lykins v. Fun Spot Trampolines,* 172 Ohio App.3d 226, 2007-Ohio-1800, 874 N.E.2d 811, to establish that her injury is not one directly associated with trampoline use. In *Lykins,* five adults at a Fourth of July party decided to use the trampoline in the back yard. Lykins and three others moved to the perimeter of the mat surface, while the fifth person took his turn jumping in the middle. Lykins testified that she bounced approximately six inches in the air as a result of the person jumping in the middle.

{¶ 24} At some point, her brother moved to the center of the trampoline for his turn to jump. When he jumped, Lykins lost her balance and fell on her back onto the trampoline mat. Lykins broke her neck and crushed her spinal cord. She was rendered a quadriplegic as a result of the injuries she sustained.

{¶ 25} Lykins testified that she did not know that multiple people bouncing on a trampoline at a given time created the risk of a double bounce, which could project her out of control even though she was merely standing on the perimeter of the trampoline. Id. at ¶ 18. She further testified that she did not know that the combined weight of the adults on the trampoline exceeded the maximum weight authorized by the manufacturer or that the weight could transform the trampoline surface from a "flexible, forgiving surface" into a "hard, inflexible surface." Id.

{¶ 26} In addition to her own testimony, Lykins offered expert testimony to establish that the foregoing hazards are not commonly known to most people who use trampolines. Id. at ¶ 19. Lykins's experts further opined that only through instruction or adequate warning would these conditions become known. Id. She also offered the testimony of her fellow party guests who admitted that they were unaware of the danger. Id.

{¶ 27} Although the *Lykins* court conceded that "jumping on a trampoline involves the obvious risks of losing balance, falling down, falling off the apparatus altogether, and colliding with other individuals if more than one is present on the trampoline," the court ultimately concluded that the hazards allegedly giving rise to Lykins's injuries were not open and obvious. Id. at ¶ 27.

{¶ 28} In the case sub judice, the only testimony concerning the moment of appellant's injury came from appellant: Alyssa "bounced [her] up" and appellant landed on her left leg. Based upon appellant's testimony, she argues that (1) several children using the trampoline at one time "could" have resulted in a "double bounce," (2) the normally forgiving and pliable trampoline surface "should" not commonly cause the injury that she suffered, (3) she was using the trampoline in a normal and customary way, and (4) the events that led to her injury do not happen frequently enough to become a risk that is commonly associated with trampoline use and therefore are outside the scope of primary assumption of the risk.

{¶ 29} Appellant contends that "[e]ven if the [primary assumption of the risk] doctrine applies, it should not control because [appellant] would only be found to have assumed the ordinary risks of jumping on a trampoline; not that of being bounced up on the trampoline by a larger child and coming down on an inflexible surface hard enough to break her femur."

{¶ 30} Appellant relies on speculation, rather than fact, in reaching the conclusion that genuine issues of material fact exist as to whether her injuries were the result of the "ordinary risks" associated with using a trampoline. *Marchetti,* supra. For instance, she argues that she may have been injured as a result of a double bounce, but there is no testimony to support her theory that a double bounce occurred. She relies heavily on the Twelfth District's decision in *Lykins,* but fails to point to facts that distinguish her injury from injuries that commonly result from using a trampoline. For instance, appellant has not argued that the weight limit on the trampoline was exceeded, that she was merely standing on the perimeter of the mat, or that some unforeseeable combination of factors caused her injury.

{¶ 31} Essentially, appellant argues that because most children do not break their legs while using a trampoline, her injury must be the result of negligence on the part of appellees. Supposition does not create a genuine issue of material fact, but rather requires a trier of fact to render a decision based upon mere speculation, and it is well settled that "a jury verdict may not be based upon mere speculation or conjecture." *Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Co.* (1975), 42 Ohio St.2d 122, 126, 71 O.O.2d 85, 326 N.E.2d 651.

{¶ 32} The *Lykins* court observed that jumping on a trampoline involves the obvious risks of losing one's balance and falling down. Simply stated, there is no evidence to suggest that appellant's injury was the product of anything other than the ordinary risks associated with using a trampoline with other children.

{¶ 33} Furthermore, the testimony that appellant's parents had forbidden her to use the trampoline, due to their express concern that she could be injured as a result of using it with older children, contradicts appellant's argument that the

risk was not foreseeable. Kelly also conceded that he did not want appellant on the trampoline because it was an "older-style" trampoline and considerably harder and less pliant than newer designs.

{¶ 34} In summary, the trial court correctly applied the primary-assumption-of-the-risk doctrine in this case. Insofar as appellant asserted that the trial court applied the wrong standard, not that appellees acted recklessly or intentionally, her sole assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

VUKOVICH, P.J., and DEGENARO, J., concur.