[Cite as *Hague v. Summit Acres Skilled Nursing & Rehab.*, 2010-Ohio-6404.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RUTH HAGUE | ) | CASE NO. 09 NO 364 |
| | ) | |
| PLAINTIFFS-APPELLANTS | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SUMMIT ACRES SKILLED NURSING | ) | |
| & REHABILITATION | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Noble County, Ohio Case No. 208-0066

JUDGMENT:      Affirmed.

APPEARANCES:

For Plaintiff-Appellant:      Atty. Miles D. Fries
Gottlieb, Johnston, Beam & Dal Ponte
320 Main Street
P.O. Box 190
Zanesville, Ohio 43702-0190

For Defendant-Appellee:      Atty. Christopher S. Humphrey
Buckingham, Doolittle & Burroughs, LLP
4518 Fulton Drive, NW
P.O. Box 35548
Canton, Ohio 44735-5548

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: December 17, 2010

WAITE, J.

{¶1} Appellants, Ruth and Robert Hague, appeal the judgment entry of the Noble County Court of Common Pleas granting summary judgment against them and in favor of Appellees, Summit Acres and Summit Acres Skilled Nursing & Rehabilitation ("SASNR") in this negligence and loss of consortium action. Ruth was injured on a treadmill at Summit Acres fitness center, and Appellants assert that Appellees were negligent in failing to provide any instruction or supervision on her first day at the facility.

{¶2} As a part of the membership process, Ruth signed the following release:

{¶3} "I agree that by using the fitness center, I am responsible for my actions. I agree that summit acres, inc. Is [sic] not liable for any injuries that I might receive by my use of the fitness center. I have checked with my doctor about the exercise program I am commencing upon."

{¶4} Appellees argued that Ruth executed a valid release and, thus, the negligence claim should be dismissed as a matter of law. The trial court agreed citing *McAdams v. McAdams* (1909), 80 Ohio St. 232, 88 N.E. 542, for the proposition that Ruth was bound by the release. (8/11/09 J.E., p. 2.)

{¶5} In their sole proposition of law, Appellants argue that the release is ambiguous and there exists a genuine issue of material fact regarding the parties' intentions in executing the release. While we agree that the release is ambiguous pursuant to Ohio law, we affirm the decision of the trial court based on the alternative

theory raised in the motion for summary judgment, the doctrine of primary assumption of the risk.

{¶6} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267. When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. Id.

{¶7} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis sic.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party carries its burden, the nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, in the face of a properly supported motion for summary judgment, the nonmoving party must produce

some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.

{¶8} Before the trial court on summary judgment were the deposition of Ruth Hague; the affidavits of Don Crock, a SASNR administrator; Judy Robinson, the Summit Acres' manager who accepted Ruth's application for a renewal membership; and Chris Singer, a registered nurse who attended to Appellant after she fell from the treadmill. Robinson provided two affidavits, one recounting the events of January 18, 2008, and another attesting to the fact that the treadmill at issue was functioning properly on that date.

{¶9} According to the Crock affidavit, SASNR does not operate the Summit Acres fitness center. (Crock Aff., ¶4.) The statements in Crock's affidavit are unrebutted. Therefore, the summary judgment entered in favor of SASNR was not erroneous and Ruth's counsel has admitted as much in argument of the appeal.

{¶10} The following facts are undisputed unless otherwise noted. When Ruth, who was 67 years old at the time, applied for a renewal membership at Summit Acres in 2008, she told Robinson that she was a former member, but that she had been a member a long time ago. (Hague Depo., Vol. II, pp. 32-33, 68.) Ruth conceded that Robinson did not hear the comment about the length of time since her previous membership, because she thought Robinson was following her into the fitness center, when, in fact, Robinson had turned in the opposite direction. (Hague Depo., Vol. II, p. 75.)

{¶11} Ruth had been a member in 2003. Ruth conceded that in 2003 staff members were never present in the fitness center at Summit Acres. (Hague Depo., Vol. I, pp. 82-84.) Ruth also conceded that the instructions she received on the treadmill she used in 2003 came from a fellow member, not a staff person. (Hague Depo., Vol. II, p. 24.) Ruth stated that she did not recall seeing any posters or instruction sheets posted near the treadmill in either 2003 or 2008. (Hague Depo., Vol. II, p. 30.) In addition to using the treadmill at the fitness center in 2003, Ruth had used her daughter's treadmill approximately one year before the accident. (Hague Depo., Vol. II, p. 73.)

{¶12} According to Ruth, she did not ask for any assistance when she entered the fitness center because there was no one there to ask. (Hague Depo., Vol. II, p. 60.) She claimed that the treadmill she used was not the same one she used in 2003. (Hague Depo., Vol. II, p. 34.) She stated that she stepped onto the treadmill and "pushed one and it had one, two, three, and then there was a big, red stop, and then four, five, six under that." (Hague Depo., Vol. II, p. 64.)

{¶13} According to a photograph of the panel on the treadmill attached to the motion for summary judgment, the red button located near the number buttons was not the "stop" button, but was instead the "start/enter" button. The photograph depicts only a portion of the panel and the "stop" button does not appear in the photo. Appellant does not allege that the treadmill malfunctioned.

{¶14} Ruth walked on the treadmill for about a minute when she claims the machine jerked and started increasing in speed. She "probably hit [the stop button]

15 times and it didn't stop." (Hague Depo., Vol. II, p. 66.) She called for help but no one responded. She lost her footing on the treadmill and the treadmill pulled her legs back, but she held on to the front bar of the treadmill for approximately two minutes and thirty seconds before releasing the front bar. (Hague Depo., Vol. II, pp. 66-68.) She stated that she never thought to step off of the treadmill, because she was focused on pushing the red button. (Hague Depo., Vol. II, p. 72.)

{¶15} According to Robinson, she asked Ruth if she needed any instruction before using the fitness equipment, but Ruth assured her that she was a former member of the fitness center. (8/4/08 Robinson Aff., ¶5.) Robinson further stated that the manufacturer's instructions for the use of the treadmill were posted on the wall next to the machine. This posting was located next to a sign that reads, "PLEASE BE CAREFUL" and "[u]ser assumes all liability due to injury or fall while using exercise equipment and walking track." (8/4/08 Robinson Aff., ¶8-9.) In addition to the photographs of the treadmill at issue, photos of the area surrounding the treadmill were attached to Robinson's affidavit, as well as copies of the treadmill instructions and signs posted in the fitness center, and a copy of Ruth's renewal membership application.

{¶16} According to Singer's affidavit, immediately after the accident Ruth conceded that she was at fault because she had used a treadmill in the past and knew how to operate it. (Singer Aff., ¶6.) A statement that was prepared by Singer on the day of the accident is attached to her affidavit. Singer claims that Ruth said, "I knew how to step to the side, but didn't do it." (Singer Aff., ¶8.) Singer further said

that the staff at Summit Acres wanted to call an ambulance, but Ruth insisted that they call her daughter to pick her up at the fitness center and take her to the emergency room. (Singer Aff., ¶9.)

{¶17} Although her exact injuries are not clearly delineated in the record, it does appear that Ruth broke both of her shoulders, and spent a considerable amount of time in residential rehabilitation centers. In her deposition, which was taken in two parts approximately one year after the accident, she stated that her husband must help her dress and bathe due to her injuries.

{¶18} It is important to note that Appellant had a litany of medical problems prior to the accident (diabetes, Wolff Parkinson White Type A, two strokes, mitrovalve prolapse, high blood pressure, high cholesterol, congestive heart failure, obesity, pacemaker). (Hague Depo., Vol. I, pp. 37-42.) Ruth stated that her doctor told her that she needed to exercise, but that her doctor had not specifically authorized the use of a treadmill.

<u>PROPOSITION OF LAW</u>

{¶19} "A DOCUMENT PURPORTING TO BE A WAIVER OF LIABILITY SHOULD NOT BE ENFORCED AGAINST AN INURED [SIC] PARTY UNLESS AN INTENT TO RELEASE ONE FOR LIABILITY FOR NEGLIGENCE IS EXPRESSED IN CLEAR AND UNEQUIVOCAL TERMS."

{¶20} Releases from liability for future tortious conduct are generally not favored by the law and are narrowly construed. *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 46-47, 505 N.E.2d 264; *Swartzentruber v. Wee-K Corp.* (1997),

117 Ohio App.3d 420, 424, 690 N.E.2d 941; see, also, *Thompson v. Otterbein College* (Feb. 6, 1996), 10th Dist. No. 95APE08-1009. Nonetheless, courts routinely apply such releases to bar future tort liability as long as the intent of the parties, with regard to exactly what kind of liability and what persons and/or entities are being released, is stated in clear and unambiguous terms. See, e.g., *Lamb v. University Hospitals Health Care Enterprises, Inc.*, 8th Dist. No. 73144 (clause including word "release" and "negligence" as well as specifically identifying persons released from liability sufficiently clear to release fitness club from liability for injuries); *Swartzentruber*, supra, at 424-427 (language releasing livery stable from "any and all claims" that arose out of "any and all personal injuries" was sufficiently clear and specific to bar injured horseback rider's negligence claims); *Conkey v. Eldridge* (Dec. 2, 1999), 10th Dist. No. 98AP-1628, *5 (language in rental agreement releasing owner from "all liability for personal injuries, property damage, loss from theft, vandalism, fire, water, explosion, rodent damage, or any other causes" was sufficiently specific and clear to bar renter's claim arising out of theft of race car stored on owner's property).

{¶21} On the other hand, where the language of the release is ambiguous or too general, courts have held that the intent of the parties is a factual matter for the jury. See, e.g., *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 44-45, 356 N.E.2d 496 (medical consent form purporting to absolve physician and hospital "from responsibility for any untoward or unfavorable results" from surgery was ineffective because it failed to mention release from liability for negligence and failed to explain

unfavorable results); *Holmes v. Health & Tennis Corp. of Am.* (1995), 103 Ohio App.3d 364, 659 N.E.2d 812 (health club membership contract stating that member used facilities at his "own risk" and that club would not be liable for any injury or damage resulting from use of the facilities failed to express a clear and unambiguous intent of member to release health club from its negligence); *Tanker v. N. Crest Equestrian Ctr.* (1993), 86 Ohio App.3d 522, 621 N.E.2d 589 (language that horseback rider assumed "full responsibility and liability" for any and all personal injury associated with the riding of any horse at equestrian center was so general as to be meaningless); see, also, *Isroff v. Westhall Co.* (Feb. 21, 1990), 11th Dist. No. 14184, *2, unreported ("[i]t is a well-recognized rule that a release that is so general that it includes within its terms claims of which the releasor was ignorant, and thus not within the contemplation of the parties when the release was executed, will not bar recovery of such claims").

**{¶22}** "The pivotal inquiry is whether it is clear from the general terms of the entire contract, considered in light of what an ordinary prudent and knowledgeable party of the same class would understand, that the proprietor is to be relieved from liability for its own negligence." *Swatzentruber v. Wee-K Corp.* (1997), 117 Ohio App.3d 420, 425, 690 N.E. 2d 941. It is undisputed that the release did not clearly state that Ruth was waiving liability for negligence on the part of the facility or its staff.

**{¶23}** The watershed case involving injuries sustained at a fitness club is the Tenth District case of *Jacob v. Grant Life Choices Fitness Center* (June 4, 1996), 10th Dist. No. 95APE12-1633. In *Jacob*, the Court held that language in membership

agreement releasing the fitness center from liability for any injury or damage including damages resulting from, "acts of active or passive negligence on the part of the Center, its officers or agents," barred the member's negligence claims against the fitness center. Id. at *1. The Supreme Court denied the plaintiff's motion for a discretionary appeal in *Jacobs*. See *Jacobs v. Grant Life Choices Fitness Center* (1996), 77 Ohio St.3d 1482, 673 N.E.2d 143.

**{¶24}** More recent cases have likewise required an explicit statement releasing the defendant from its negligence or the negligence of its agents. *Baker v. Just for Fun Party Ctr., L.L.C.* (2009), 185 Ohio App.3d 112, 2009-Ohio-6201, 923 N.E.2d 224, ¶4 ("I knowingly and freely assume all such risks, both known and unknown, and however arising, even if arising from the negligence of other participants and employees. I will assume full responsibility for the participants listed below" is unambiguous release); *Brown v. Columbus All-Breed Training Club,* 152 Ohio App.3d 567, 2003-Ohio-2057, 789 N.E.2d 648, ¶19 (release insufficient to give clear notice to the signer that she has waived all prospective rights to compensation from any negligent activity on the part of dog training company and employee).

**{¶25}** The only exception of note occurred in *Hall v. Woodland Lake Leisure Resort Club, Inc.* (October 15, 1998), 4th Dist. No. 97CA945. In *Hall*, the Fourth District concluded that the release at issue barred the plaintiff's recovery for the club's negligence, despite the fact that the term "negligence" was not actually included in the release. The release in that case read:

**{¶26}** "All facilities at the resort are used by members and their guests at their own risk. The Club will not be responsible or liable for the loss or damage to any property of the members or guests or any bodily injury or death due to the condition or operation of the Resort. The Club has no duty to protect guests or members or their property from damage or injury * * *." Id. at *1.

**{¶27}** The *Hall* Court decided that the foregoing language sufficiently apprises an individual that the club is released from liability for its own negligence.

**{¶28}** Here, the release signed by Ruth does not contain the words, "release" or "negligence," and does not identify the individuals, company or corporation being released from liability. The release simply states that Summit Acres is not liable for any injuries that Appellant might receive "by [her] use of the fitness center." "For express assumption of risk to operate as a bar to recovery, the party waiving his right to recover must make a conscious choice to accept the consequences of the other party's negligence." *Holmes*, supra, at 367. Hence, the release in this case is of the type that have been characterized by Ohio courts as too ambiguous and general.

**{¶29}** Appellees urge that in most cases cited by Appellants, the plaintiffs asserted negligence on the part of the defendant's staff. For instance, in *Holmes*, supra, a health club employee failed to "spot" the plaintiff while he was lifting weights. Appellees argue:

**{¶30}** "[Ruth] does not claim vicarious liability based on the negligence of an employee. Rather, she alleges the failure of the Summit Acres to instruct and supervise her on how to use the treadmill. * * * She does not claim that any employee

of Summit Acres negligently breached a duty to her, but, rather, alleges a direct claim against Summit Acres.

**{¶31}** "In light of the language in the waiver that [Ruth] was 'responsible for her own actions' while using the exercise equipment, there is no fact issue as to the scope of the waiver in covering the liability alleged here. [Ruth] used it at her own risk, and the waiver bars her claim." (Appellees' Brf. ,p. 9.)

**{¶32}** Appellees apparently believe that the type of negligence alleged in this case is distinguishable from the negligence alleged in the previous cases. However, Appellants base their contentions on the claim that Ruth was injured as a result of Robinson's failure to provide adequate instruction on the treadmill and her failure to supervise Ruth.

**{¶33}** Based on Ohio law in this matter, it appears that the release is this case was ambiguous, and the intent of the parties with respect to the release should be a factual matter for the jury. Therefore, the trial court erred in entering summary judgment in favor of Summit Acres based solely on the release.

**{¶34}** In the alternative, Appellees posit that, even if the release in this case does not support the award of summary judgment, recovery on the negligence claim is barred by the doctrine of primary assumption of the risk. Appellees raised a primary assumption of the risk argument in their motion for summary judgment, although this argument was not addressed by the trial court.

**{¶35}** To establish a claim of negligence in Ohio, a plaintiff must show the existence of a duty, a breach of that duty, and injury directly and proximately resulting

from a breach of the duty. *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. The existence of a duty in a negligence action is a question of law. *Wallace v. Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22.

**{¶36}** Primary assumption of the risk has been defined as " '* * * (1) consent or acquiescence in (2) an appreciated or known (3) risk * * *.' " *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 112, 451 N.E.2d 780, quoting *Benjamin v. Deffet Rentals* (1981), 66 Ohio St.2d 86, 89, 419 N.E.2d 883. The doctrine is applicable as a defense where "the risk is so obvious that plaintiff must have known and appreciated it." Id. Primary assumption of the risk is the judicially created affirmative defense whereby a defendant owes no duty to protect a plaintiff against certain risks that are so inherent in an activity that they cannot be eliminated. *Sproles v. Simpson Fence Co.* (1994), 99 Ohio App.3d 72, 78, 649 N.E.2d 1297. Primary assumption of the risk is a complete bar to recovery because the essential element of duty is negated. *Anderson* at 114.

**{¶37}** The doctrine of primary assumption of the risk has most often been applied in cases involving sports and recreational activities. To be covered under the doctrine, the risk must be one that is so inherent to the sport or activity that it cannot be eliminated. *Kelly v. Roscoe*, 185 Ohio App.3d 780, 2009-Ohio-4279, 925 N.E.2d 1006, ¶20. We applied the doctrine last year in *Kelly* where we concluded that the use of a trampoline involves such a risk.

**{¶38}** The Fifth District has twice considered the primary assumption of the risk doctrine as it applies to injuries sustained on treadmills. Although the Fifth District declined to apply the doctrine in both cases, the facts in those cases are easily distinguishable from the facts in the instant case.

**{¶39}** In *Darling v. Fairfield Medical Center* (2001), 142 Ohio App.3d 682, 756 N.E.2d 754, the plaintiff, who had a treadmill in her basement, was using the facility's treadmill as a part of a prescribed rehabilitation program. The treadmill at the facility had no side rails; they had been removed, contrary to the manufacturer's operation manual. The appellees in that case asserted the doctrine of primary assumption of the risk.

**{¶40}** While it appears that the matter would avoid summary judgment on the basis of the facility's use of defective equipment, alone, the *Darling* Court went on to distinguish the physical therapy patient at issue from invitees of health club facilities. Ultimately, the court concluded that physical therapy patients, who were using the facility based on doctor's orders and were medically required to participate in rehabilitation, were inherently more likely to lose their balance or trip than ordinary health club patrons. The Fifth District stated:

**{¶41}** "Appellee's facility, as previously stated, was a controlled medical rehabilitation facility where only health care patients were permitted to continue in an exercise program, which was monitored by appellee's staff. It is unlike a ride at an amusement park or attendance at a sporting event. *The very nature of the closed environment sets this facility apart from commercially advertised spas and health*

*clubs.* We find that the doctrine of primary assumption of the risk is not applicable, but that the issues of breach of duty, proximate cause, and comparative negligence are viable." (Emphasis added)  Id. at 689.

**{¶42}** Earlier this year, the Fifth District reversed the entry of summary judgment against a fitness center patron who fell from a treadmill after intentionally pushing the acceleration button in *Bennington v. Ladies Super Fitness*, *Inc.* 5th Dist. No. 2009 CA 0085, 2010-Ohio-1645.  In that case, the plaintiff had never used a treadmill.  The fitness center employee programmed the treadmill for the plaintiff, but the plaintiff decided that she wanted to walk faster, and ultimately fell from the treadmill and dislocated her shoulder.

**{¶43}** In her instructions as to the use of the machine, the fitness center employee claimed that she told the plaintiff not to push the acceleration button and that she might fall from the treadmill if it was accelerated.  The plaintiff claimed that the fitness center employee pointed out the acceleration button but provided no information about it.  The center argued on summary judgment that the dangers associated with a treadmill are open and obvious, and that the plaintiff assumed the risk of injury.

**{¶44}** In a 2-1 decision, the Fifth District concluded that genuine issues of material fact existed as to whether the plaintiff knew of the dangerous condition of accelerating the speed of the treadmill, since there was conflicting testimony regarding the amount of information provided to the plaintiff prior to using the treadmill.  Id. at ¶28.  The decision, however, hinged on the fact that once the

employees of the center undertook to aid and/or instruct plaintiff in her use of the center, they created a duty to do so in a safe manner.

**{¶45}** The dissent observed that the open and obvious doctrine involves an objective rather than subjective test, and, as a consequence, whether the plaintiff actually knew about the danger was irrelevant. Furthermore, because the plaintiff admitted that the fitness center employee called the acceleration button to her attention, the danger inherent in pushing the button was open and obvious.

**{¶46}** Unlike the facts in the Fifth District cases, the facts in the instant case establish that Ruth assumed an appreciated risk when she used the treadmill. The fitness center at Summit Acres was open to the public, although it was also used as a rehabilitation facility and was located adjacent to a residential rehabilitation center. Ruth was a paying member of the public, not a rehabilitation patient, and there is no allegation that the treadmill was not assembled pursuant to the manufacturer's specifications.

**{¶47}** Ruth was aware that not all treadmills are the same, as she had used the treadmill at the fitness center in 2003 and her daughter's treadmill approximately one year before the accident. She conceded that the treadmill at the fitness center did not appear to be the same treadmill from her 2003 visits. She further conceded that she knew the fitness center was never supervised and that she relied on a fellow Summit Acres member to provide instructions on the operation of the treadmill in 2003. Unlike the fact pattern in *Bennington*, there is no factual question regarding what, if any, instructions were given to Ruth about the treadmill. Furthermore,

although Ruth testified that she did not see the treadmill instructions or the warnings posted by the machine, Robinson's affidavit and the photographs attached to the affidavit establish that the instructions and warnings were clearly posted.

**{¶48}** Finally, Ruth signed a release in this case. The language in the release was sufficiently ambiguous to call into question whether Ruth waived any recovery based upon injuries she sustained as a result of Summit Acres' negligence or the negligence of its employees. However, the release put Ruth on notice of the fitness center's intent to limit its liability for injuries sustained due to her own negligence. Therefore, based on all of the undisputed facts in the record, the primary assumption of the risk doctrine applies in this case.

**{¶49}** Accordingly, the judgment entry of the trial court granting summary judgment to Appellees is affirmed, albeit for different reasons than stated in the judgment entry with respect to Summit Acres and SASNR.

Donofrio, J., concurs.

Vukovich, P.J., concurs.